Ex Parte Robert Lee THOMPSON,
Applicant.

No. AP–75151.

Court of Criminal Appeals of Texas.

Nov. 9, 2005.

Tom Moran, Houston, for appellant.

Ann Lee Dulevitz, Asst. D.A., Houston, Matthew Paul, State's Attorney, Austin, for State.

## OPINION

COCHRAN, J., delivered the opinion of the Court in which MEYERS, PRICE, WOMACK, KEASLER, HERVEY, and HOLCOMB, JJ., joined.

Applicant was convicted of capital murder for the shooting death of Mansor Bhai Rahim Mohammed during an aggravated robbery at the 7–Evenings Food Store in Houston. Based upon the jury's answers to the special issues set out in Article 37.071,[1] the trial court set punishment at death. This Court affirmed applicant's conviction and sentence on direct appeal.[2]

Applicant raises six claims in his habeas corpus application filed pursuant to Article 11.071 of the Texas Code of Criminal Procedure. We ordered the parties to brief two of those claims which we rephrased:

1) Whether applicant is factually innocent of the offense of capital murder; and

2) Whether applicant was deprived of the effective assistance of counsel due to his trial counsel's failure to request a charge on felony murder.

Both of these claims hinge upon the "newly available" fact that Sammy Butler, applicant's triggerman-accomplice, was convicted of felony-murder after applicant's trial.

Applicant's position on the first claim is that

There is no evidence that Applicant *personally* killed the complainant. To the contrary, the *only* evidence is that Butler committed the offense. Thus, Applicant's guilt is derivative of Butler's guilt. Simply stated, at most Applicant is guilty of the offense for which Butler is guilty.

Regarding the second claim, applicant argues that the only viable defense strategy in his trial was to request a jury instruction on felony-murder—a strategy which succeeded in the accomplice's trial. Because applicant's counsel did not request an instruction on felony-murder, applicant contends that his trial attorney

---

1. Tex.Code Crim. Proc. art. 37.071(b) & (e)(1).

2. *Thompson v. State*, No. 73,128, 2003 WL 21466925 (Tex.Crim.App. June 25, 2003) (not designated for publication).

provided ineffective assistance of counsel under *Strickland v. Washington.*[3]

For the reasons set out below, we reject both of these claims. As for his remaining claims, we adopt the trial court's findings of fact and conclusions of law. Based upon those findings and our independent review, we deny relief.

## I.

The State's evidence at trial showed that applicant and Sammy Butler acted together in planning the armed robbery at the 7-Evenings Food Store. Applicant told Butler that this would be their last robbery and it was going to be "a big one." Applicant, armed with a .25 caliber semiautomatic weapon, went into the convenience store to exchange a beer he had purchased earlier. Butler, armed with a .38 caliber revolver, came into the store with him.

Applicant approached Mubarakali Meredia, who was tending the counter, pointed his pistol at Mr. Meredia, and told him to open the cash register and hand over all of the money. Applicant shot Mr. Meredia in the abdomen when he did not move quickly enough. He shot at Mr. Meredia's cousin, Mansor Bhai Rahim Mohammed, who also worked at the shop, when he began running toward the back of the store.[4] Applicant then shot Mr. Meredia three more times as he lay on the floor. He ordered Mr. Meredia to get up and get the money for him. Mr. Meredia did so. Then applicant put his pistol to Mr. Meredia's neck and pulled the trigger. Nothing happened. He had run out of bullets. So applicant hit Mr. Meredia on the head with the butt of his gun and struck him with the

cash register drawer. Nonetheless, Mr. Meredia survived.

Applicant took the money and ran out of the store. Butler grabbed a stack of lottery tickets as he followed behind applicant. Applicant jumped into the driver's seat of their car, while Butler got into the passenger's seat, rolled down his window, and fired two shots at Mr. Rahim who had run to the front door. One bullet hit Mr. Rahim in the chest, and he died.

Based upon this evidence, the jury convicted applicant of capital murder. During the punishment phase, the jury heard evidence that this robbery-murder was only one part of a robbery-murder spree during which applicant, as the triggerman, had committed two additional capital murders.[5] Based upon all of the evidence submitted, the jury found that applicant would pose a future risk of danger and that there were no mitigating circumstances that would call for a life sentence. The judge sentenced him to death.

Approximately six months after applicant's conviction, his accomplice, Sammy Butler, was tried for capital murder. The jury in that case returned a guilty verdict on the lesser-included offense of felony-murder and sentenced Butler to life imprisonment.

## II.

### A. Claim of Factual Innocence

Applicant contends that he is factually innocent of capital murder because a different jury found Sammy Butler guilty only of felony-murder.[6] He argues that

---

3. 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

4. At Butler's trial, the State offered evidence that Butler pulled out his .38 revolver, also shot at Mr. Rahim, and threatened several other customers during this time.

5. Applicant had three pending capital murder charges at the time of trial.

6. According to applicant, Butler's conviction of the lesser-included offense of felony-murder "is a jury finding after a full trial, a finding binding upon the State under the

his accomplice liability for the robbery-murder of Mr. Rahim hinges upon Butler's conviction in a separate trial rather than the evidence of his and Butler's conduct and mental states in applicant's own trial. Applicant argues that "it is the intent of the killer which determines whether the offense is a capital murder or a felony-murder. If the actual killer intended the death, it is a capital murder. If he did not, it was not capital murder." Applicant misinterprets the law.

■ Under Section 7.02(a), a person is criminally responsible for a capital-murder offense committed by another person's conduct, if

(1) acting with the kind of culpability required for the offense, he causes or aids an innocent or nonresponsible person to engage in conduct prohibited by the definition of the offense; [or]

(2) acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense[.]

Thus, applicant could be found guilty of capital murder under Section 7.02(a) if he had the intent to kill someone during this aggravated robbery, and (1) he caused or aided a totally innocent person to shoot and kill Mr. Rahim, or (2) he solicited, encouraged, directed, or aided Sammy Butler to commit capital murder.[7]

Furthermore, under Section 7.02(b), a person may be found guilty of capital murder if the following conditions are met:

[I]f, in the attempt to carry out a conspiracy to commit one felony, another felony is committed by one of the conspirators, all conspirators are guilty of the felony actually committed, though having no intent to commit it, if the offense was committed in furtherance of the unlawful purpose and was one that should have been anticipated as a result of the carrying out of the conspiracy.

The jury in this case was instructed that it could find applicant guilty of capital murder in any of three different ways: as the actual triggerman; as a party to Sammy Butler's shooting of Mr. Rahim under Section 7.02(a)(2); or as a co-conspirator to the aggravated robbery under Section 7.02(b). Under the first two theories, the jury was required to find that applicant himself intended the death of Mr. Rahim; under the third theory the jury was required to find that applicant should have anticipated Mr. Rahim's death as a consequence of his and Butler's agreement to commit aggravated robbery and Mr. Rahim's death occurred in furtherance of that crime.

If the jury found that applicant and Sammy Butler conspired to commit an aggravated robbery, and either one of them shot and killed Mr. Rahim (intentionally or unintentionally), either or both of them may be convicted of capital murder if Mr. Rahim was killed in furtherance of the aggravated robbery and his murder was one that should have been anticipated as a part of this aggravated robbery.

■ There is nothing in Texas law that limits applicant's criminal responsibility for the conduct of his accomplice, Sammy Butler, to only those specific crimes for

---

principles of collateral estoppel. Both Butler's acquittal of capital murder and his availability to testify are facts which were unavailable at the time of Applicant's trial."

**7.** Put another way, the evidence must show that, at the time of the offense, the parties were acting together, each contributing some part toward the execution of their common purpose. *Ransom v. State,* 920 S.W.2d 288, 302 (Tex.Crim.App.1994).

which a jury has convicted Butler. In fact, Texas law is exactly the opposite. Section 7.03(2) of the Penal Code states that it is no defense

> that the person for whose conduct the actor is criminally responsible has been acquitted, has not been prosecuted or convicted, has been convicted of a differ-ent offense or of a different type or class of offense, or is immune from prosecu-tion.[8]

It is well-established that one accomplice may be found guilty of a different, more serious offense than other accomplices.[9] Indeed, the acquittal of the principal does not prevent conviction of his accomplice.[10]

8. TEX. PEN.CODE § 7.03(2); *see, e.g., Singletary v. State*, 509 S.W.2d 572, 578 (Tex.Crim.App. 1974) (noting that "an accomplice is not enti-tled to a new trial or reversal just because a subsequently tried principal has been acquit-ted. The fact that another jury acquitted the principal in a subsequent trial does not by itself entitle an accomplice to the same of-fense to a new trial. In many instances dif-ferent juries reach opposite results on the same evidence.") (citations omitted); *Reece v. State*, 521 S.W.2d 633, 634–35 (Tex.Crim.App. 1975) (either of two co-defendants could be convicted of aggravated robbery although one of them was convicted only of "simple" rob-bery; "the evidence was sufficient to support a conviction of aggravated robbery for either defendant"); *see generally,* Donald M. Zupa-nec, *Acquittal of Principal, or His Conviction of Lesser Degree of Offense, as Affecting Prose-cution of Accessory, or Aider and Abettor,* 9 A.L.R.4th 972 (1981 & 2005 Supp.).

9. *See generally,* 1 CHARLES E. TORCIA, WHARTON'S CRIMINAL LAW § 34 (15th ed. & 2004 Supp.); ROLLIN M. PERKINS & RONALD N. BOYCE, CRIMINAL LAW, 582 (1957); *see, e.g., People v. Garcia*, 28 Cal.4th 1166, 124 Cal.Rptr.2d 464, 52 P.3d 648, 652 (2002) (noting that "[b]ecause an aider and abettor may potentially be guilty of a more serious offense than the shooter ... the absence of a shooter's conviction is not dispositive of the aider and abettor's exposure to liability"); *State v. Kaplan*, 124 N.H. 382, 469 A.2d 1354, 1355 (1983) (conviction of wife who pleaded guilty to accomplice role in murder of husband would not be reversed even though principal, an alleged contract killer, was acquitted, and noting that " 'con-viction of an accomplice is thus premised upon proof of the commission of the criminal act, rather than on the guilt of the princi-pal' ") (citation omitted); *Jeter v. State*, 261 Md. 221, 274 A.2d 337, 338–39 (1971) (col-lecting cases and concluding that virtually all American jurisdictions hold that the subse-quent acquittal of a principal does not affect the trial or conviction of an accomplice). The North Carolina Supreme Court has traced this principle back three hundred years to *Wallis' Case*, 1 Salk. 334. See *State v. Whitt*, 113 N.C. 716, 18 S.E. 715, 716 (1893). The Model Penal Code also adopts this position. *See* MODEL PENAL CODE § 2.06(7) (2001) (ac-complice can be convicted "though the per-son claimed to have committed the offense ... has been acquitted").

10. The controlling case on this issue is *Stan-defer v. United States*, 447 U.S. 10, 100 S.Ct. 1999, 64 L.Ed.2d 689 (1980), in which Stan-defer was accused of aiding and abetting a revenue official, Cyril Niederberger, in ac-cepting compensation beyond that authorized by law. Niederberger was acquitted of ac-cepting unlawful payments. After Niederber-ger's trial and before his own trial, Standefer moved to dismiss the charges and argued that he could not be convicted of aiding and abet-ting the principal when the principal had been acquitted. His motion was denied, he was convicted, the court of appeals affirmed, and the Supreme Court granted certiorari. Standefer raised two issues before the Su-preme Court: (1) the federal aiding and abet-ting statute was not intended to authorize prosecution of an aider and abettor after the principal had been acquitted; and (2) the doctrine of nonmutual collateral estoppel barred the government from prosecuting him after Niederberger's acquittal.

The Supreme Court traced the origins of aiding and abetting back to English common law and noted that at early common law all parties to a felony received the death penalty; therefore, certain procedural rules were de-veloped to shield accessories from such severe punishment. 447 U.S. at 15, 100 S.Ct. 1999. Among them was the rule that an accessory could not be convicted without the prior con-viction of the principal offender: "In every way, 'an accessory [followed], like a shadow, his principal.' " *Id.* (quoting 1 J. BISHOP,

And it does not matter whether the acquittal of the principal occurs before or after the accomplice's trial.[11] What matters under Section 7.02(a) is the criminal *mens rea* of each accomplice; each may be convicted only of those crimes for which he had the requisite mental state. As Professor LaFave notes:

> The notion that the accomplice may be convicted, on an accomplice liability theory, only for those crimes as to which he personally has the requisite mental state, is applicable in a variety of circumstances. It means, for example, that one may not be held as an accomplice to the crime of assault with intent to kill if that intent was not shared by the accomplice. But this limitation has proved most significant in the homicide area, where the precise state of mind of

the defendant has great significance in determining the degree of the offense. To determine the kind of homicide of which the accomplice is guilty, it is necessary to look to his state of mind; it may have been different from the state of mind of the principal and they thus may be guilty of different offenses. Thus, because first degree murder requires a deliberate and premeditated killing, an accomplice is not guilty of this degree of murder unless he acted with premeditation and deliberation. And, because a killing in a heat of passion is manslaughter and not murder, an accomplice who aids while in such a state is guilty only of manslaughter even though the killer is himself guilty of murder. Likewise, it is equally possible that the killer is guilty only of man-

---

CRIMINAL LAW § 666 (8th ed. 1892)). This procedural bar applied only to the prosecution of accessories in felony cases, not in misdemeanor cases where an accessory could be prosecuted after the principal was acquitted. *Id.* at 15–16, 100 S.Ct. 1999. In 1848, Parliament enacted a statute which permitted an accessory to be convicted even though the principal was acquitted. *Id.* at 16, 100 S.Ct. 1999. Congress followed in 1899 by enacting the first statute in this country which provided that "all persons concerned in the commission of a crime, whether it be felony or misdemeanor, and whether they directly commit the act constituting the crime or aid and abet in its commission, though not present, are principals, and to be tried and punished as such." *Id.* at 17–18, 100 S.Ct. 1999. The Supreme Court, in its discussion of the historical law on aiding and abetting, stated, "Read against its common-law background, the provision evinces a clear intent to permit the conviction of accessories to federal criminal offenses despite the prior acquittal of the actual perpetrator of the offense." *Id.* at 19, 100 S.Ct. 1999. Thus, all participants in a crime "are punishable for their criminal conduct; the fate of other participants is irrelevant." *Id.* at 20, 100 S.Ct. 1999.

Moving to the issue of collateral estoppel, the Court noted that several aspects of crimi-

nal law make nonmutual estoppel against the government when a principal is acquitted inappropriate. *Id.* at 21–22, 100 S.Ct. 1999. These include limited discovery rights, a prohibition against a directed verdict on behalf of the government, a bar against the government seeking appellate review of an acquittal, and a jury's unfettered right to acquit out of compassion or compromise. *Id.* at 22, 100 S.Ct. 1999. Furthermore, "[t]he application of nonmutual estoppel in criminal cases is also complicated by the existence of rules of evidence and exclusion unique to our criminal law." *Id.* at 23, 100 S.Ct. 1999. Thus, evidence that is admissible against one accomplice may be inadmissible against others, preventing the government from presenting all of its possible proof against some of the participants in the crime. *Id.* at 23–24, 100 S.Ct. 1999. Although "symmetry of results may be intellectually satisfying, it is not required"; thus, the acquittal of a principal does not bar the conviction of an accomplice. *Id.* at 25, 100 S.Ct. 1999.

11. *See Owens v. State*, 161 Md.App. 91, 867 A.2d 334, 340 (2005) (noting that the "clear answer given by other courts and treatise writers" is that even after a principal has been acquitted of a crime, another person can be convicted for his role in aiding and abetting the commission of that same crime).

slaughter because of his heat of passion but that the accomplice, aiding in a state of cool blood, is guilty of murder.[12]

Thus, what is essential to applicant's conviction of capital murder as a party under Section 7.02(a)(2) [13] is evidence that supports a finding, beyond a reasonable doubt, that he intended the death of Mr. Rahim and that he assisted Sammy Butler in causing that death.[14]

The evidence of applicant's intent to kill is not merely sufficient, it is overwhelming:

* Applicant came to the convenience store armed with a semiautomatic pistol;

* Applicant knew that Butler came to the convenience store armed with a .38 revolver;

* Applicant intentionally pointed his pistol at Mr. Meredia and demanded money;

* Applicant intentionally shot Mr. Meredia in the abdomen;

* Applicant intentionally shot Mr. Meredia three more times as he lay on the ground;

* Applicant intentionally shot at Mr. Rahim who was fleeing to the back of the store;

* Applicant intentionally put his semiautomatic pistol against Mr. Meredia's neck and pulled the trigger; the only reason Mr. Meredia did not die from that intentional act was because applicant's revolver was out of bullets;

* Applicant intentionally hit Mr. Meredia over the head with the butt of his revolver;

* Applicant intentionally struck Mr. Meredia with the cash register drawer.

From this evidence of applicant's obvious intent to kill Mr. Meredia and his repeated attempts to do so, any reasonable juror could conclude that applicant also intended that his accomplice, Sammy Butler, kill Mr. Rahim.

Applicant argues that, even though he may have acted with malice aplenty and attempted to kill and intended to kill, the offense of capital murder was never committed by anyone because a different jury found that Butler did not intentionally kill Mr. Rahim. He relies upon the first sentence of Section 7.03 which reads:

In a prosecution in which an actor's criminal responsibility is based on the conduct of another, the actor may be convicted *on proof of commission of the offense* and that he was a party to its commission. . . .[15]

Applicant argues that Butler's subsequent acquittal of capital murder proves that, under Section 7.03, no capital murder was ever committed. Applicant misreads Section 7.03. That provision applies to the proof offered at applicant's trial, not the evidence offered in some other trial. It was in applicant's trial that the State bore the burden of offering "proof of commission of the offense" of capital murder. And indeed it did. There is evidence

**12.** 2 Wayne R. LaFave, Substantive Criminal Law § 13.2(c) at 346–47 (2d ed. 2003).

**13.** Because of our disposition of this first claim under Section 7.02(a)(2), we need not address the applicability of applicant's conspiracy liability under Section 7.02(b) which does not require proof of applicant's intent to cause Mr. Rahim's death.

**14.** The jury was not instructed, during the guilt stage, on the law of transferred intent under Section 6.04(b). Thus, the charge required the jury to find that applicant intended the death of Mr. Rahim, rather than some other person under Section 7.02(a)(2).

**15.** Tex. Pen.Code § 7.03 (emphasis added).

aplenty that Sammy Butler, as well as applicant, intended to cause Mr. Rahim's death:

* Butler came to the convenience store armed with a .38 revolver;

* Butler knew that applicant came to the convenience store armed with a semiautomatic pistol;

* Butler knew that applicant shot Mr. Meredia several times;

* Butler shot at Mr. Rahim and another customer while applicant was shooting at Mr. Meredia;

* Butler threatened to shoot other customers while applicant was grabbing the money from the cash register;

* Butler did shoot in the direction of Mr. Rahim a second time while both robbers were still in the store;

* After applicant and Butler got into their getaway car, Butler rolled down the passenger-side window and shot Mr. Rahim who had run to the door of the store;

* Butler shot at Mr. Rahim twice;

* One of those shots hit Mr. Rahim in the chest and killed him.

* Applicant told police during his oral confession that Butler "kept shooting. He unloaded and I unloaded."[16]

■ It might be possible to conclude that Butler did not aim at Mr. Rahim or intend to shoot him in the chest. But applicant's jury was certainly entitled to believe that Butler's two shots were not a sheer accident, and that Mr. Rahim's death was not the result of a wayward bullet that fortuitously ended up striking the unlucky man.[17] It was entitled to conclude that Butler intended precisely what occurred— Mr. Rahim's death.[18] And it was also entitled to conclude that applicant intended that Butler shoot and kill Mr. Rahim just as applicant surely would have killed Mr. Meredia if only he had not first run out of bullets.

■ In sum, there was ample evidence offered at applicant's trial that Sammy Butler committed the offense of capital murder and that applicant assisted or encouraged him in that endeavor by his own

16. Applicant's confession was admissible at his own trial but not at Butler's trial.

17. As a part of this claim, applicant contends that he has "newly available" evidence from Butler who would testify that he did not intend to kill Mr. Rahim. But this is not newly available—Butler, like applicant, gave a written confession shortly after his arrest. Applicant's trial counsel stated that he was familiar with the confession in which Butler admitted his participation in the robbery at the 7–Evenings store and that he shot and killed Mr. Rahim. Butler stated then (and presumably would state now) that he did not intend to kill Mr. Rahim. Applicant's trial counsel was aware of Butler's confession at the time of trial and Butler's assertion that he did not intend to kill Mr. Rahim matched applicant's same assertion about Butler's conduct in his confession. Applicant's counsel stated that there was nothing in Butler's confession that caused him to change—or want to change— his overall trial strategy.

The jury in Butler's trial apparently believed that statement, while the jury in applicant's trial did not believe that Butler unintentionally killed Mr. Rahim. We cannot dispute the right of two different juries in two different trials to reach two different verdicts concerning two different defendants based upon two different sets of admissible evidence.

18. It is both a common-sense inference and an appellate presumption that a person intends the natural consequences of his acts, *Whitlock v. State*, 146 Tex.Crim. 594, 600, 177 S.W.2d 205, 208 (1943), and that the act of pointing a loaded gun at someone and shooting it toward that person at close range demonstrates an intent to kill. *Jones v. State*, 944 S.W.2d 642, 647 (Tex.Crim.App.1996); *Flanagan v. State*, 675 S.W.2d 734, 744–45 (Tex. Crim.App.1984) (op. on reh'g); *Womble v. State*, 618 S.W.2d 59, 64 (Tex.Crim.App. 1981).

acts of attempting to commit the capital murder of Mr. Meredia. The fact that the jury in Butler's trial declined to convict him of capital murder does not affect the validity of applicant's capital murder conviction.[19]

Thus, although the verdict in Butler's trial may be "newly available evidence," it is not evidence that shows (or even tends to show) applicant's innocence of capital murder. Therefore, we adopt the trial court's findings of fact and conclusions of law concerning applicant's claim of factual innocence.

## B. Claim of Ineffective Assistance of Counsel

■ Applicant also contends that his trial counsel provided constitutionally deficient assistance because he failed to request an instruction on the lesser-included offense of felony-murder.[20] Applicant further contends that his counsel's deficient performance probably caused the jury to return a verdict of capital murder rather than felony-murder. Applicant raised this ineffective assistance claim on direct appeal, arguing that trial counsel should have "request[ed] a lesser-included offense

charge as it would apply to the offense of murder."[21] This Court rejected that claim because the record did not contain sufficient information concerning trial counsel's strategy. It does now.

In his affidavit, applicant's trial counsel stated that the defense strategy that he and his co-counsel decided upon was that applicant did not anticipate Butler's murder of Mr. Rahim:

The basis of our cross-examination, and defensive strategy was that Mr. Thompson knew of and intended to participate in an aggravated robbery, but in no way did he either know or anticipate that someone would be killed, especially under the circumstances of the complaining witness' death.... This was the argument that I made to the jury during the guilt phase of the trial. However, based on the confessions, and the actions of Mr. Thompson while inside the store, i.e. Mr. Thompson shot someone, who did not die, Mr. Williams and I concluded that a request for a lesser included instruction of felony murder was not shown by the evidence.[22]

Thus, trial counsel made the reasoned strategic decision that their strongest ar-

19. Applicant argues that his "factual innocence" claim is cognizable under *Schlup v. Delo*, 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995), as one involving both a constitutional violation and a "gateway" innocence claim. But it is not. Applicant makes no showing that *he* is innocent of capital murder or that the State violated his constitutional rights by trying him before his accomplice, Sammy Butler.

20. Applicant asserts this claim under both the Sixth Amendment to the United States Constitution and under the Texas Constitution, article I, § 10. Because he provides no separate analysis under the Texas Constitution, we will presume that applicant's position is that the two provisions are identical for purposes of his claim. *See Heitman v. State,* 815 S.W.2d 681, 690 n. 22 (Tex.Crim.App.1991).

21. On direct appeal, applicant contended that trial counsel should have requested an instruction on simple murder because the jury might have believed that applicant only "knowingly" caused the death of the victim.

22. At the time defense counsel was appointed, applicant had three pending capital murder charges and three aggravated robbery charges. Applicant had given oral confessions admitting his involvement in all of those pending cases. Concern about the admissibility of extraneous offenses would surely have been at the forefront of defense counsel's mind as he planned his strategy for the guilt phase of this trial.

gument was that applicant did not and could not have anticipated that Butler would shoot Mr. Rahim as the two departed from the convenience store. That argument was at least as strong—if not stronger—than the argument that Butler did not intend to kill Mr. Rahim and that his act of shooting at him twice was an unforeseeable accident, albeit an act clearly dangerous to human life. Applicant's attorney noted that this defensive position was carried through to the punishment phase concerning the "anti-parties" special issue:[23]

> With regard to Special Issue 2, the argument was centered on 1. The fact that Mr. Thompson was not the shooter. 2. That the manner in which the complainant was killed, i.e. as they drove away, Mr. Butler shot in the dark and the complainant was standing at the door. Mr. Thompson was in no way responsible for the death of Mr. Rahim, and could not have anticipated that Butler would shoot as they were driving away and it was dark. 3. That Mr. Thompson's intent was to commit an aggravated robbery and nothing more, which he did.

As applicant's counsel noted, this strategy was ultimately unsuccessful, perhaps because of the evidence of applicant's two other capital murders. But counsel did not create those facts.

Applicant now argues that he was not entitled to any charge on the lesser-included offense of aggravated robbery, but he was entitled to a charge on felony-murder. He states that, "given those undisputed facts [of applicant's attempts to kill Mr. Meredia and shoot Mr. Rahim] no one could plausibly argue that Applicant should not have reasonably anticipated that Butler might engage in violence, including shooting a person." Such a strategy, argues applicant, is "laughable."

Applicant notes that in *Solomon v. State*,[24] this Court held that a person charged with capital murder is not entitled to a lesser-included instruction on aggravated robbery unless there is evidence showing one of three things: (1) there was no murder; (2) the murder was not committed in furtherance of a conspiracy; or (3) the murder should not have been anticipated.[25] In this case, as applicant candidly admits, there is ample evidence that (1) there was a murder; (2) the murder was committed in furtherance of a conspiracy; and (3) the murder should have been anticipated. Thus, he argues, it was error to charge the jury on this lesser included offense. Perhaps so, but it certainly did not harm applicant, and at least it gave the defense attorneys something solid to argue during closing arguments.

■ Applicant then turns around and contends that counsel should have requested a lesser-included instruction on felony-murder. But submission of felony-murder is not warranted unless there is evidence that shows:

> (1) for purposes of party liability under Section 7.02(a)(2), applicant himself did not intend the death of Mr. Rahim or another;

---

**23.** That special issue read as follows:

> Do you find from the evidence beyond a reasonable doubt that Robert Lee Thompson, the defendant himself, actually caused the death of Mansor Bhai Rahim Mohammed, on the occasion in question, or if he did not actually cause the death of Mansor Bhai Rahim Mohammed, that he intended to kill Mansor Bhai Rahim Mo-

hammed or another, or that he anticipated that a human life would be taken?

This charge, unlike the one at the guilt stage, did incorporate the doctrine of transferred intent.

**24.** 49 S.W.3d 356 (Tex.Crim.App.2001).

**25.** *Id.* at 369.

(2) for purposes of conspiracy liability under Section 7.02(b), Butler's act of shooting Mr. Rahim was not committed in furtherance of a conspiracy; or

(3) for purposes of conspiracy liability under Section 7.02(b), applicant should not have anticipated that Butler would shoot Mr. Rahim.

In arguing that he was not entitled to a charge on aggravated robbery, applicant agrees that there is no evidence supporting prong (2) or (3). And he fails to point to any evidence that affirmatively shows that applicant himself did not intend the death of Mr. Rahim or another.

Applicant relies, instead, upon his oral confession to the police in which he describes Butler's action and surmises about Butler's intent:

> Well, he [Butler] shoots—And, the man was coming up and was going back. He just shot basically at the window just to make the man go run back in the store as we got away.

This description of Butler's actions and intent, however, is not evidence that affirmatively shows that *applicant* had no intent to kill.[26] And, under the law of parties, it is applicant's intent that is determinative of his guilt for either capital murder or felony-murder.

■ The evidence was clearly sufficient to establish that applicant participated in the murder of Mr. Rahim and intended his death. The question concerning an entitlement to the lesser-included of felony-murder is whether the evidence would permit a rational jury to make a contrary finding: that is, based upon the evidence, could a rational jury conclude that Butler acted entirely alone in the shooting death of Mr. Rahim, and that applicant did not intend or anticipate this murder?[27] That

---

**26.** *See Salinas v. State,* 163 S.W.3d 734, 741–42 (Tex.Crim.App.2005). In *Salinas,* another capital murder case involving the law of parties, we rejected the contention that defense counsel was ineffective for failing to request an instruction on felony-murder. *Id.* There, as here, "[t]he critical question is whether the evidence showed that appellant (as a principal or party) had the intent only to rob or to kidnap, and he did not have the intent to kill." *Id.* at 742. We noted in *Salinas* that "[w]hether appellant was the actual actor or criminally responsible for the acts of his cohorts by virtue of the law of parties, the evidence shows not *only* an intent to commit robbery or a lesser included offense, but *also* the intent to kill." *Id.* (emphasis in original). The same is true in the present case; applicant points to no evidence that affirmatively demonstrates his lack of intent to kill.

**27.** *See Aguilar v. Dretke,* 428 F.3d 526, 531–32 (5th Cir.2005) (holding that Texas capital murder defendant was not entitled to charge on lesser-included offense of murder when co-defendant caused death of second victim but defendant had motive to kill victim or his family members). As the Fifth Circuit explained:

> The evidence was clearly sufficient to establish that Aguilar participated in the murder of Leo, Sr. The question is whether the evidence would permit a reasonable jury to make a contrary finding: that Quiroz acted alone in Leo's murder without encouragement or other participation by Aguilar. After reviewing the record, we are satisfied it would not permit a rational jury to find that if Aguilar is guilty, he is only guilty of murdering Annette. As the district court pointed out, Aguilar-and not Quiroz-had the motive to kill Esparza or his family members. The evidence established that Aguilar had been to the trailer home on several earlier occasions, threatening Esparza, and had previously discussed with Annette Chavez the whereabouts of Esparza. Aguilar entered the Esparzas' trailer with his eighteen-year-old nephew (Quiroz), who had no connection to the Chavezes or Esparza or with Aguilar's marijuana trafficking. The two entered the trailer with a firearm and proceeded to severely beat the Chavezes. Then, the couple was shot "execution style" within minutes of each other. There is no evidence in the record supporting Aguilar's contention that he did not have intent to kill both Leo and Annette when he and Quiroz

evidence need be only more than a mere scintilla, and it may be impeached or contradicted, but it must be sufficient, if believed, to at least permit a rational jury to return a verdict on the lesser-included offense.[28] Under this standard, applicant was not entitled to a charge on felony-murder and therefore his counsel was not ineffective for failing to request such a charge.[29]

Applicant argues that there was no downside to asking for an instruction on the lesser-included offense of felony-murder. But there might well have been a very serious downside had applicant offered any evidence of lack of intent or had he engaged in any cross-examination that might raise an issue concerning his lack of intent to kill. Once applicant opens the door to the issue of murderous intent, the State would presumably walk right through that door with the evidence of the two extraneous capital murders that applicant himself committed to prove that he had a murderous intent on this occasion just as he had on those two other occasions.[30]

When judging an attorney's conduct in retrospect, we cannot assume that only his conduct might have been different. We must assume that, as in a chess game, if a defendant hypothesizes a different strategy or move by his pawn or queen, the State would have altered its strategy and made a different move with its chess pieces as well. In this case, applicant's case at the guilt phase might have been considerably worsened had he attempted to raise an issue concerning his intent to kill. Therefore, we cannot conclude that his counsel's chosen strategy—to forego an attack upon the State's case concerning his own intent to kill and instead concentrate on a plausible argument (albeit largely unsupported by evidence) that applicant could not have anticipated Butler's act of shooting Mr. Rahim—was a constitutionally ineffective one.

We therefore adopt the trial court's findings of fact and conclusions of law, and based upon those findings and our own independent review, we deny relief on all claims.

---

entered the residence. A reasonable jury, who would find that Aguilar was the second shooter in this double murder, could not find that he did not encourage or otherwise participate in the shooting of Leo, Sr. We therefore conclude that the district court did not err in rejecting Aguilar's *Beck* [*v. Alabama*, 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980)] claim. *Id.* at 531–32.

28. *Rousseau v. State*, 855 S.W.2d 666, 672–73 (Tex.Crim.App.1993) ("some evidence must exist in the record *that would permit a jury rationally to find* that if the defendant is guilty, he is guilty only of the lesser offense") (emphasis in original); *see also Cordova v. Lynaugh*, 838 F.2d 764, 767 (5th Cir.1988) (holding that a lesser included offense instruction should be given "if the evidence would permit a jury rationally to find [a defendant] guilty of the lesser offense and acquit him of the greater").

29. *Salinas*, 163 S.W.3d at 742; see also *Fuentes v. State*, 991 S.W.2d 267, 272–73 (Tex.Crim.App.1999) (counsel in capital murder trial not ineffective for failing to request lesser-included offense of felony-murder instruction because "there is no evidence upon which a jury could rationally have found that appellant did not intend to kill when he shot the deceased.").

30. See, e.g., *Navarro v. State*, 154 S.W.3d 795, 797–98 (Tex.App.-Houston [14th Dist.] 2004, pet. ref'd) (evidence of other violent acts toward his intended victim admissible under Rule 404(b) in capital murder trial to prove both defendant's intent to kill and absence of mistake in attempting to kill his intended victim); *Johnson v. State*, 932 S.W.2d 296, 302–04 (Tex.App.-Austin 1996, pet. ref'd) (in capital murder trial, evidence of extraneous offense was admissible to prove the culpable mental state of intent to kill when the accused presented evidence to dispute that intent).

KELLER, P.J., filed a concurring opinion.

JOHNSON, J., dissented.

KELLER, Presiding Judge, concurring.

Applicant argues:

[I]t is the intent of the killer which determines whether the offense is a capital murder or a felony-murder. If the actual killer intended the death, it is a capital murder. If he did not, it was not capital murder.[1]

The Court says that applicant is wrong, and that it is applicant's intent, not the intent of the primary actor, that determines whether applicant is guilty of capital murder or felony murder under the law of parties.[2] I think the Court is mistaken in this.

## A. The Statute

§ 7.02 provides:

(a) A person is criminally responsible *for an offense committed by the conduct of another* if:

(1) acting with the kind of culpability required for the offense, he causes or aids an innocent or nonresponsible person to engage in conduct prohibited by the definition of the offense;

(2) acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person *to commit the offense;* or

(3) having a legal duty to prevent commission of the offense and acting with intent to promote or assist its commission, he fails to make a reasonable effort to prevent *commission of the offense.*

(b) If, in the attempt to carry out a conspiracy to commit one felony, another felony is committed by one of the conspirators, all conspirators are guilty *of the felony actually committed, though having no intent to commit it,* if the offense was committed in furtherance of the unlawful purpose and was one that should have been anticipated as a result of the carrying out of the conspiracy.[3]

## B. Conspiracy Liability

Under *Boykin v. State,* we interpret a statute in accordance with the plain meaning of its language unless the language is ambiguous or the plain meaning would lead to absurd results that the Legislature could not have possibly intended.[4] § 7.02(b) unambiguously imposes vicarious liability on all members of a conspiracy for the crime committed by one of its members, if certain conditions are met. Conspirators who did not personally commit the offense are rendered liable for "the felony actually committed" by the primary actor if the offense was in furtherance of the conspiracy and should have been anticipated, even if they had no intent to commit that crime. The focus of liability is on the crime the primary actor committed (and thus, on his culpable mental state) which is then imputed to the other conspirators.

In the "factual innocence" section, the Court suggests that a jury could have convicted applicant of capital murder under the conspiracy theory of parties, regardless of Butler's intent:

If the jury found that applicant and Sammy Butler conspired to commit an

---

1. Court's op. at 552.

2. *Id.* at 559.

3. Tex. Pen.Code § 7.02 (emphasis added). All references to sections are to the Texas Penal Code unless otherwise indicated.

4. 818 S.W.2d 782, 785 (Tex.Crim.App.1991).

aggravated robbery, and either one of them shot and killed Mr. Rahim (intentionally or *unintentionally*), either or both of them may be convicted of capital murder if Mr. Rahim was killed in the furtherance of the aggravated robbery and his murder was one that should have been anticipated as a part of this aggravated robbery.[5]

But, as discussed above, § 7.02(b) imposes liability on non-triggerman conspirators for the "felony actually committed." If Butler killed the victim and that killing was an accident, then the "felony actually committed" would be felony murder, and applicant, as a conspirator, would be guilty of *that* felony. This paragraph also seems to dispense entirely with the culpable mental state required for capital murder. But *someone* must commit the capital murder, which, under the theory alleged in this case, is an intentional murder.

I also disagree with the Court's treatment of the ineffective assistance claim. In addressing applicant's contention that there was some evidence that Butler did not intend to kill, the Court holds that this evidence was irrelevant to whether applicant was entitled to an instruction on the lesser-included offense of felony murder because the evidence did not demonstrate that *applicant* lacked the intent to kill, and according to the Court, applicant's intent to kill is what matters under the law of parties. With regard to conspiracy liability, I think this position is incorrect. Butler's intent is of paramount importance in determining the "felony actually committed," that is to be imputed to applicant under § 7.02(b). In fact, § 7.02(b) expressly makes the non-triggerman's intent irrelevant.

## C. Accomplice Liability

The wording of § 7.02(a)(2) strongly suggests that it also is a vicarious liability provision: imposing on an accomplice liability for the crime committed by the primary actor. Under § 7.02(a)(2), the accomplice, with the requisite intent, assists the primary actor "to commit the offense." This language seems to assume that the primary actor does in fact commit the offense. A similar approach is taken in § 7.02(a)(3), which extends liability to someone with a duty to act who fails to prevent the "commission of the offense." By contrast, § 7.02(a)(1), involving liability for an innocent person's conduct, includes special language to establish that the accomplice can be guilty of an offense for which the principal is not. Instead of referring to commission of the offense, that provision refers to "conduct prohibited by the definition of the offense" and explicitly requires that the defendant act "with the kind of culpability required for the offense."

The Court is correct to say that for applicant to be convicted of capital murder as a party under § 7.02(a)(2), he must have the requisite culpable mental state for capital murder,[6] but as discussed above, the language of that provision suggests that the primary actor must also have the requisite culpable mental state for the charged offense. The Court cites a passage from Professor LaFave's treatise to suggest otherwise, indicating in a homicide example that accomplices with lesser or greater culpable mental states than the primary actor could be convicted of lesser or greater offenses.[7] But application of the reasoning in this passage to Texas law

5. Court's op. at 552 (emphasis added).

6. *See* Court's op. at 552.

7. *See* Court's op. at 554 (quoting 2 WAYNE R. LAFAVE, SUBSTANTIVE CRIMINAL LAW § 13.2(c) at 346–347 (2d ed. 2003)).

is problematic. Professor LaFave acknowledges that his comments are "not in all respects applicable in every jurisdiction" because of subtle differences among jurisdictions in the formulation of the "intent to promote or assist" standard.[8] With regard to lesser-included offenses, Professor LaFave's statements might be given effect under the plain meaning of § 7.02(a)(2): because guilt of an offense necessarily entails guilt of all lesser-included offenses, an accomplice with a lesser culpable mental state than the primary actor could still be said to be in the shoes of the primary actor, but only as to the lesser culpable mental state, and so, to a lesser-included offense required by that mental state. But using § 7.02(a)(2) to find an accomplice guilty of a greater offense than the principal could have committed seems questionable under the statutory language.[9]

The Court quotes two excerpts from *Salinas v. State*[10] for the proposition that only *applicant's* intent matters under the law of parties in determining whether the lesser-included offense of felony murder is raised by the evidence. I think that despite the language in *Salinas,* the case does not stand for that proposition. This is the entire passage:

> The critical question is whether the evidence showed that appellant (as a principal or a party) had the intent only to rob or to kidnap, and he did not have the intent to kill. *See Santana v. State, 714 S.W.2d 1, 9 (Tex.Crim.App.1986). Dragging Morales from the car and*

*shooting him in the head with a shotgun at close range were not merely acts clearly dangerous to human life that resulted in a death. Likewise, placing Leslie Ann, a 21–month–old child, strapped into her car seat, in tall grass fifteen feet from a road and outside of town, was not merely an act clearly dangerous to human life.* Whether appellant was the actual actor or criminally responsible for the acts of his cohorts by virtue of the law of parties, the evidence shows not only an intent to commit robbery or a lesser included offense, but also the intent to kill.[11]

The italicized material shows that what was critical in *Salinas* was the primary actor's intent. Moreover, the citation to *Santana* is worth noting, as it is an apparent reference to the following paragraph:

> The evidence shows that the deceased was shot as he walked from the Purolator van towards the main entrance of the Sage store. Witnesses testified that the only warning given to the deceased was that he should halt or else he would be shot. The witnesses testified that immediately after they heard this warning, two shots were fired, one of which struck and killed the deceased. Evidence also showed that although the deceased was wearing a gun, his holster snap had never been unfastened. We find that the evidence raised only a cold-blooded, unprovoked killing. *The shooter, whoever he was, gave no opportunity whatsoever for the deceased to cooperate*

8. LaFave, § 13.2(b) at 344,

9. While Professor LaFave gave numerous examples of *lesser-included* offenses, he cites only one example of a greater offense that he believed could be imposed on an accomplice: murder, where the principal could be guilty only of voluntary manslaughter. Under Texas law, that example is no longer of concern, as the voluntary manslaughter offense has been

eliminated, and the "sudden passion" issue that distinguished voluntary manslaughter from murder has been incorporated as a punishment issue in the murder statute. *See* Tex. Pen.Code § 19.02(d).

10. 163 S.W.3d 734 (Tex.Crim.App.2005).

11. *Id.* at 742 (italics added).

*in any way. Clearly, he fired his gun at the deceased with only one intent-the intent to kill. Whether the deceased (sic) was the actual shooter or criminally responsible for the acts of the shooter by virtue of the law of parties, we find the evidence shows not only the intent to commit robbery, but also the intent to kill.* Thus we find that the evidence did not raise the issue of felony murder.[12]

Thus, *Santana* likewise suggests that an accomplice's entitlement to a lesser-included offense instruction turns upon the evidence of *the primary actor's* culpable mental state.

With regard to the lesser-included offense, the Court also says:

But submission of felony-murder is not warranted unless there is evidence that shows:

(1) for the purpose of party liability under Section 7.02(a)(2), applicant himself did not intend the death of Mr. Rahim or another;

(2) for purposes of conspiracy liability under Section 7.02(b), Butler's act of shooting Mr. Rahim was not committed in the furtherance of a conspiracy; *or*

(3) for purposes of conspiracy liability under Section 7.02(b), applicant should not have anticipated that Butler would shoot Mr. Rahim.[13]

As discussed above, submission of felony-murder would be supported by evidence raising a fourth option: that *Butler* committed only felony murder, which could then be imputed to applicant under the law of parties.

And it seems to me that the Court's three-point listing is problematic for a couple of other reasons. My first difficulty is with the use of the disjunctive "or." I

think that evidence negating liability for capital murder under § 7.02(a)(2) would not entitle a defendant to an instruction on the lesser offense unless there were also evidence negating liability under § 7.02(b). Each independent theory of party liability must be accounted for in raising the lesser-included offense.

But there may be a more serious problem: it is questionable whether all three of the conditions, taken together, could ever raise a lesser-included offense of felony murder. As discussed earlier, Professor LaFave suggested that an accomplice could be deemed guilty of a lesser-included offense under "intent to promote or assist" liability, i.e. § 7.02(a)(2), if the accomplice had a lesser culpable mental state than the principal had. This type of reasoning obviously does not work for conspiracy liability, under § 7.02(b), because that legal theory necessarily assumes that the co-conspirators do not have the primary actor's greater culpable mental state. So when both of these party liability theories are in play, in order to be entitled to a felony murder instruction the defendant would have to provide evidence that demonstrated a lesser culpable mental state giving rise to a lesser offense under § 7.02(a)(2) *and* the defendant would have to provide evidence that entirely negated the applicability of § 7.02(b).

But it is questionable whether an accomplice's lesser culpable mental state under § 7.02(a)(2) could ever raise felony murder as a lesser-included offense. Felony murder attaches no culpable mental state to the killing itself, but § 7.02(a)(2) requires that the defendant have the "intent to promote or assist" the commission of the offense. If applicant lacked the intent to kill, and merely intended to commit the

---

**12.** 714 S.W.2d at 9.

**13.** Court's op. at 558–59 (emphasis added).

underlying felony, then it would seem that the only felony applicant intended to promote or assist would be the underlying felony. A prior decision applying § 7.02(a)(2) to manslaughter may suggest a more expansive reading of the statute,[14] but it remains to be seen whether the reading would be expansive enough to infer an "intent to promote or assist" for a result-of-conduct offense, where a culpable mental state for the result is completely absent.

### D. Alternative Grounds for Denying Relief

In spite of the above, the Court nevertheless reaches the correct result. The Court correctly observes that § 7.03 makes acquittal of the principal irrelevant to whether the accomplice can be convicted under the law of parties.[15] All that is required is that the evidence at *applicant's* trial support the proposition that the principal committed the offense charged. The Court correctly observes that the prosecution introduced a substantial amount of evidence at applicant's trial that Butler intentionally killed the victim and, thus, committed capital murder.

I also agree with the Court that the failure to request the lesser-included offense of felony murder was part of a valid trial strategy of pursuing the lesser-included offense of aggravated robbery, although my reasoning differs somewhat from the Court's. On the one hand, because liability for capital murder (as opposed to felony murder) under the law of parties could have turned upon Butler's intent, pursuing the lesser-included offense of felony murder would not have required applicant to place his own intent in issue, and thus, would not have increased his exposure to

the introduction of extraneous offenses. But on the other hand, advocating both lesser-included offenses might have fragmented the defense of the case in the eyes of the jury, and counsel could have validly concluded that limiting their efforts to one lesser offense would result in a stronger presentation. I agree with the Court that the argument that Butler's actions were unforeseeable was at least as strong, if not stronger, than the argument that Butler did not intend to kill the victim, and the former strategy had the benefit of continuity with the defense position on the anti-parties special issue. While the Court takes applicant at his word that aggravated robbery was not raised by the evidence, I am not convinced of such, and more importantly, applicant's trial attorneys could have reasonably believed that the evidence was sufficient to support the instruction. The trial court apparently agreed, since aggravated robbery was submitted as a lesser-included offense in the jury charge.

For these reasons, I concur in the Court's judgment.

**14.** *Mendez v. State,* 575 S.W.2d 36 (Tex.Crim. App.1979) (intent to assist reckless act).

**15.** Court's op. at 552–53, 555–56.