**Affirmed and Opinion Filed May 20, 2015**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-13-01251-CR

**RAYMOND ANTHONY WASHINGTON, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 416th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 380-81913-2011**

## MEMORANDUM OPINION
Before Justices Bridges, Lang, and Evans
Opinion by Justice Bridges

Raymond Anthony Washington appeals his murder conviction. A jury convicted appellant and sentenced him to thirty-three years' confinement. In a single issue, appellant argues the trial court erred in excluding evidence of the impossibility of prosecuting his seventeen-year-old co-defendant for capital murder, thus denying appellant the ability to present a complete defense. We affirm the trial court's judgment.

Nelson Snider testified he met appellant in May 2011 when appellant asked if Snider "could find him a gun" or "find him marijuana." Snider did not deal in guns, but he told appellant he could provide marijuana, and the two exchanged contact information. On June 1, 2011, appellant called and asked Snider if he could find a pound of marijuana for appellant. Snider knew a man, Andre Currier, who was "practically family" and who had access to a pound

of marijuana. During the following few hours, Snider was in contact with appellant and Currier, trying to arrange a deal. Ultimately, appellant agreed to buy a pound of marijuana for $4500, and appellant picked up Snider and drove him to Frisco where they were to meet Currier near a 7-Eleven and sample the marijuana. Before leaving with appellant, Snider told a friend to take down appellant's license plate number when he came to pick up Snider.

At the meeting, another man, Daniel Ramsour, showed up in a dark blue SUV driven by a woman. Snider did not know Ramsour was going to show up, and appellant had not mentioned Ramsour. Appellant said Ramsour was "the person with the money." After Currier gave appellant a sample of the marijuana, Snider and appellant left together, and Ramsour left in the SUV.

Appellant drove to a convenience store where he went inside, leaving Snider outside on the phone with Currier. Snider and Currier were "both expressing their worries" concerning the unknown person who had showed up at the sample exchange. Currier said he wanted to meet at a Wal-Mart, and appellant drove Snider to that location. On the way, appellant said "his friend with the money, his ride had to leave," and appellant pulled over beside the road and Ramsour got in the back seat of appellant's car.

Appellant drove to the "back of the parking lot" at Wal-Mart and parked next to Currier's Mercedes. Snider got out of appellant's car and got in the front passenger side of Currier's car. Appellant, who was supposed to get in Currier's car, "[t]akes off running to the Wal-Mart." Ramsour got in the back seat of Currier's car behind Snider. Currier took out the marijuana and weighed it before placing it in a bag in the driver's side floorboard. Ramsour pulled out a gun and said, "Give me the weed." "There was some yelling," and both Snider and Currier had their hands up. Snider's "passenger door opened," and he saw appellant "brandishing a large combat knife." Appellant said, "Give me the weed," and Snider "heard the gun go off behind [his]

–2–

head." At the time, Snider was "turned to grab the weed," and he saw Currier get shot in the chest. In the confusion that followed, Snider threw the marijuana out of the car and appellant "turned around and grabbed it."

While Ramsour continued shooting, Snider got out of the car and ran behind a hill to take cover. Snider saw appellant and Ramsour running to appellant's car and hear them "saying that they had the weed." Snider ran back to Currier's car, which Currier had shifted into reverse and was slowly backing up in the parking lot. Snider was "begging [appellant] to throw my bag out that belonged to my brother." Snider had left in appellant's car the backpack containing his only pictures of his deceased older brother. Appellant threw the backpack out of the car, and Snider got the bag and ran to the driver's side of Currier's car. Snider saw there was blood coming out of Currier's mouth and nose, and Snider moved Currier into the passenger side of the car. Snider got in the driver's seat and drove away. At some point, Snider took Currier's cell phone. Snider was trying to take Currier to a hospital, but he "ended up getting lost" and returned to the Wal-Mart. Snider parked the car, and the police pulled in behind him. Snider ran away and called Currier's cousin Chris to come get him. Chris later took Snider to the police station where Snider gave a written statement and told police appellant's license plate number. Police subsequently obtained arrest warrants for Ramsour and appellant and determined they were in police custody in Beaumont.

Appellant was indicted on a capital murder charge. Relevant to this appeal, at trial the prosecutor commented in his opening statement that Ramsour and appellant were "both charged with capital murder." Appellant did not object to this comment. In fact, defense counsel argued in his opening statement the following:

> The situation is that the defendant and Daniel Ramsour – and Daniel Ramsour, they just told you, he's charged with capital murder. He's 17 years old. He cannot be prosecuted for capital murder under the law. It's illegal. He can only

–3–

be prosecuted for murder, because the Supreme Court of the United States has ruled –

At this point, the prosecutor objected that this statement was "argumentative," and the trial court sustained the objection. Defense counsel again stated, "He can't be prosecuted for it. The most he's looking at is a murder charge." The prosecutor again raised an "argumentative" objection. Instead of ruling on the objection, however, the trial court said, "Please continue with what you believe the evidence will show."

Later, after a police officer testified he had interviewed Ramsour, defense counsel asked, "And what is your understanding about whether he can be tried or charged with capital murder?" The prosecutor objected as to "relevance," and the trial court sustained the objection.

After the presentation of the State's case-in-chief, defense counsel proffered outside the presence of the jury the testimony of a defense attorney who would testify "whether a seventeen-year-old could be tried for capital murder." The following exchange ensued:

> [THE COURT]: Mr. Ramsour's case is pending in this court as well. He has been charged with capital murder. After that indictment we were all aware of the Supreme Court decision with reflects that the – a juvenile – again, there's a debate, a genuine debate, too, whether we're talking about someone under the age of 18 or someone who is a juvenile, because they use those terms interchangeably in their opinion, and whether or not the State – the Texas death penalty – I'm sorry – lack of possibility of parole scheme would apply to someone who is an adult in Texas but under the age of 18 at the time of the commission of the offense. So the representation that he has been charged with capital murder is accurate. How is it going to assist the jury in determining a fact in issue, if [the defense attorney] is allowed to testify that in his opinion Mr. Ramsour cannot be prosecuted under the current statutes for the offense of capital murder?

> [DEFENSE COUNSEL]: We believe, since the State has proposed it, or has breached it in opening statements to the jurors, the insinuation is that Mr. Ramsour can and will be tried for the offense of capital murder, and as the shooter could very well receive a life without parole verdict from the jury as punishment, which we believe is a direct and completely incorrect statement of what the current law is under the Supreme Court of the United States.

The prosecutor objected that the defense attorney's opinion about the law was not relevant because it would not make any fact of consequence more likely or not that appellant was guilty

of capital murder as a party and that the testimony would be more prejudicial than probative. The trial court sustained the prosecutor's objection, stating it was "not a relevant issue at this point whether or not Mr. Ramsour ultimately [could] be prosecuted under the current sentencing scheme for capital murder.

Before closing arguments in the guilt innocence phase, the prosecutor requested a motion in limine preventing appellant from mentioning any potential consequences that "the co-defendant Ramsour may be facing because of his age. There's been no evidence of it." The trial court granted the motion. The jury subsequently convicted appellant of the lesser included offense of murder, and this appeal followed.

In his sole issue on appeal, appellant argues the trial court erred in excluding evidence regarding the legal impossibility of prosecuting and convicting appellant's seventeen-year-old co-defendant of capital murder. As a result, appellant argues, the jury was left with a false impression of fact and law, and appellant was denied the opportunity to present a complete defense.

At the outset, we note appellant did not object on the basis that he was being denied the opportunity to present a complete defense when the trial court excluded the proffered evidence concerning whether a seventeen-year-old could be tried for capital murder. Because he did not argue at trial that the exclusion of evidence would violate his constitutional right to present a defense, he has failed to preserve this constitutional complaint for appellate review. *See Anderson v. State*, 301 S.W.3d 276, 280 (Tex. Crim. App. 2009) (right to meaningful opportunity to present complete defense subject to forfeiture).

Even if we were to address appellant's claim that he was denied the opportunity to present a complete defense, appellant has cited no authority supporting his argument that his

proffered evidence constituted a viable defense. On the contrary, section 7.03(2) of the penal code provides as follows:

> In a prosecution in which an actor's criminal responsibility is based on the conduct of another, the actor may be convicted on proof of commission of the offense and that he was a party to its commission, and it is no defense:

> (2) that the person for whose conduct the actor is criminally responsible has been acquitted, has not been prosecuted or convicted, has been convicted of a different offense or of a different type or class of offense, or is immune from prosecution.

TEX. PEN. CODE ANN. § 7.03 (West 2011); *see Ex parte Thompson*, 179 S.W.3d 549, 553-54 (Tex. Crim. App. 2005) (acquittal of principal does not prevent conviction of his accomplice). Thus, whether or not Ramsour could be prosecuted for capital murder, it served as no defense to appellant in his prosecution for capital murder as a party. *See id.* Because the disposition of the case against Ramsour offered no defense to appellant, we cannot conclude appellant was denied the opportunity to present a complete defense by the exclusion of evidence concerning the possible disposition of Ramsour's case.

Finally, appellant has failed to show he was harmed by the exclusion of evidence regarding the case against Ramsour. The admission of the prosecutor's testimony is non-constitutional error, and a non-constitutional error "that does not affect substantial rights must be disregarded." TEX. R. APP. P. 44.2(b); *see Schutz v. State*, 63 S.W.3d 442, 444-46 (Tex. Crim. App. 2001). Substantial rights are not affected by the erroneous admission of evidence if the appellate court, after examining the record as a whole, has a fair assurance that the error did not influence the jury, or had but a slight effect. *Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002).

Here, the jury acquitted appellant of capital murder and convicted him of the lesser included offense of murder. As to punishment, the jury sentenced appellant to thirty-three years' confinement when the punishment range for murder is 5 to 99 years or life. *See* TEX. PEN. CODE

ANN. §§ 12.32(a); 19.02(b) (West 2011). In fact, defense counsel asked the jury to assess appellant's punishment at twenty years while the State asked for a life sentence. Under these circumstances, we conclude appellant was not harmed by the exclusion of evidence concerning whether Ramsour could be prosecuted for capital murder. *See Motilla*, 78 S.W.3d at 355. We overrule appellant's sole issue.

We affirm the trial court's judgment.

Do Not Publish
TEX. R. APP. P. 47.2(b)

/David L. Bridges/

131251F.U05

DAVID L. BRIDGES
JUSTICE

–7–



## Court of Appeals
## Fifth District of Texas at Dallas
## JUDGMENT

RAYMOND ANTHONY WASHINGTON,
Appellant

No. 05-13-01251-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 416th Judicial District
Court, Collin County, Texas
Trial Court Cause No. 380-81913-2011.
Opinion delivered by Justice Bridges.
Justices Lang and Evans participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered May 20, 2015.