IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

August 19, 2008

Charles R. Fulbruge III
Clerk

No. 08-70004

ROBERT LEE THOMPSON

Petitioner-Appellant

v.

NATHANIEL QUARTERMAN, Director, Texas Department of Criminal
Justice, Correctional Institutions Division

Respondent-Appellee

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:06-CV-148

Before REAVLEY, SMITH, and BARKSDALE, Circuit Judges.

PER CURIAM:*

Robert Lee Thompson was sentenced to death in Texas state court for
capital murder. Pursuant to the Antiterrorism and Effective Death Penalty Act
of 1996 (AEDPA), he seeks a certificate of appealability (COA) for each of the 15
issues on which the district court denied federal-habeas relief. Along that line,
he also requests remand for discovery and for a hearing on one of those issues.
Because he fails to make the requisite showing, a COA is DENIED.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

I.

In December 1996, Thompson and Butler robbed a convenience store while armed with handguns. See Ex parte Thompson, 179 S.W.3d 549, 551 (Tex. Crim. App. 2005). During the robbery, Thompson approached the cash register, pointed his gun at the clerk (first clerk) behind the counter, and demanded money. Id. He shot that first clerk in the stomach when he did not move quickly enough. Id. Then he shot at, but missed, a second clerk (ultimately, the victim) who was running toward the back of the store. Id. Turning his attention back to the first clerk, who was lying on the floor, he shot him three more times before demanding he get up and give him the money. Id. That first clerk did so, after which Thompson put his handgun to the first clerk's neck and pulled the trigger. Id. Upon discovering he already had fired all of the bullets in that weapon, he hit that first clerk over the head with the cash register drawer. Id. He then fled with Butler. Id. As Thompson drove away, Butler fired his handgun from the passenger window and fatally shot the second clerk/victim (at whom Thompson had previously, unsuccessfully shot). Id. The first clerk survived and testified at Thompson's trial.

Thompson's indictment charged he caused the victim's death during the robbery by shooting him with a firearm. At the time of his trial in March 1998, Thompson had three capital murder, and several aggravated robbery, charges pending against him, including the one at hand, stemming from similar robberies. Id. at 551 n.5. Regarding all of those charges, by the time his counsel was appointed, he had made statements to the police confessing his involvement in all of them.

The jury was instructed it could find Thompson guilty of capital murder if he: (1) specifically intended to kill, and did kill, the victim; (2) intended to kill the victim by "soliciti[ing], encourag[ing], direct[ing], aid[ing], or attempt[ing] to aid" Butler's shooting him during the robbery; or (3) conspired with Butler to

commit the robbery and Butler's shooting the victim "was committed in furtherance of the conspiracy and was an offense that [Thompson] should have . . . anticipated". See id. at 552. The jury found him guilty. Id. at 551. In response to the jury's answers to the special issues, Thompson was sentenced to death. Id.

Thompson filed a motion for new trial on 15 August 2001. (This motion is not in the direct-appeal record. It is in the state-habeas record because it was filed by Thompson in those proceedings.) The motion relied upon Butler's affidavit (attached to the motion), which stated he (Butler) did not intend to kill the victim, and upon Butler's conviction for the lesser offense of felony (unintentional) murder (for which judicial notice was requested). Thompson did not receive a new trial.

On direct appeal, Thompson raised procedural-error and ineffective-assistance-of-counsel claims (his issues 6-13 & 15 here). The Texas Court of Criminal Appeals (TCCA) affirmed his conviction, and the Supreme Court of the United States denied review. Thompson v. State, No. 73128, 2003 WL 21466925 (Tex. Crim. App. 25 Jun. 2003) (en banc) (unpublished), cert. denied 124 S. Ct. 960 (2003).

While his direct appeal was pending, Thompson requested state post-conviction relief. He claimed that he was factually innocent of capital murder and that his conviction violated the Constitution (his issues 1-2 & 4 here). As he had in his motion for new trial, he relied upon Butler's "I did not intend to kill" statement and his felony-murder conviction; he attached Butler's affidavit and trial transcript. He contended the State violated his due process rights under Brady by suppressing the statement Butler made to investigators that Butler did not intend to kill the victim (his issue 3 here). He also claimed ineffective-assistance-of-counsel on several grounds (including his issues 7, 10, 14, & arguably 5 here). Thompson attached affidavits from his appellate counsel and

3

another local attorney who had reviewed his trial record, opining he received ineffective assistance. The State responded on 29 November 2000 with, inter alia, a 28 November 2000 affidavit from Thompson's trial counsel, explaining his trial preparation and strategy. On 22 December 2004, Thompson filed his proposed findings of fact and conclusions of law, attaching trial counsel's: (1) affidavit (again); (2) letter to appellate counsel; and (3) file from Thompson's trial.

The state-habeas trial court adopted the State's proposed findings of fact and conclusions of law on 25 January 2005, and recommended denying relief. On 13 April 2005, the TCCA ordered supplemental briefing on Thompson's claims for factual innocence and ineffective assistance of counsel for failure to request a felony-murder instruction. State-habeas relief was denied by the TCCA in an opinion that, inter alia, adopted the state-habeas trial court's findings and conclusions. Ex parte Thompson, 179 S.W.3d 549.

Thompson then requested federal habeas relief on 15 issues. In an extremely comprehensive, detailed, and well-reasoned 62-page opinion, relief was denied, as were his motions for expansion of the record, discovery, an evidentiary hearing, and a stay (in order to develop a record regarding his claims). Thompson v. State, No. 4:06-CV-148 (S.D. Tex. 30 Nov. 2007) (unpublished). In that opinion, a COA was also denied, sua sponte. Id.

Thompson moved to amend the judgment, seeking relief or a COA on all claims. The district court denied reconsideration. Thompson v. State, No. 4:06-CV-148 (S.D. Tex. 21 Dec. 2007) (unpublished).

II.

Thompson seeks a COA on each of the 15 issues raised in his federal petition. He also maintains the district court erred in denying his motions to expand the record with certain unspecified documents, and for discovery, an evidentiary hearing, and a stay.

4

Thompson's 28 U.S.C. § 2254 habeas application is subject to AEDPA. E.g., Penry v. Johnson, 532 U.S. 782, 792 (2001). Under AEDPA, Thompson may not appeal the denial of habeas relief unless he first obtains a COA from either the district, or this, court. 28 U.S.C. § 2253(c); Miller v. Dretke, 404 F.3d 908, 912 (5th Cir. 2005) (citations omitted). The district court must first decide whether to grant a COA; only if it is denied by that court may a COA on that issue be requested here. FED. R. APP. P. 22(b)(1). Having been denied a COA by the district court, Thompson requests one from this court on each of his 15 issues.

To obtain a COA, Thompson must make "a substantial showing of the denial of a constitutional right". 28 U.S.C. § 2253(c)(2); see Miller-El v. Cockrell, 537 U.S. 322, 336 (2003); Slack v. McDaniel, 529 U.S. 473, 483 (2000). To make such a showing when the district court's habeas denial is on the merits of an issue, Thompson must demonstrate "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further" (reasonable-jurists standard). Miller-El, 537 U.S. at 336 (quoting Slack, 529 U.S. at 484) (internal quotation marks omitted).

When the district court's denial of relief for a claim is based on a procedural ruling, such as the claim's being unexhausted, the requisite showing is expanded. See Foster v. Quarterman, 466 F.3d 359, 364 (5th Cir. 2006) (citing Hall v. Cain, 216 F.3d 518, 521 (5th Cir. 2000)), cert. denied 127 S. Ct. 2099 (2007). "In that situation, the applicant must show jurists of reason would find debatable whether: the habeas petition states a valid claim of the denial of a constitutional right; and the district court's procedural ruling was correct." Id. (citation omitted) (emphasis added) (reasonable-jurists/procedural standard).

In deciding whether to grant a COA, we can make only a threshold inquiry into the district court's application of AEDPA to Thompson's constitutional

claims; we may not consider the factual or legal merits in support of the claims. Miller-El, 537 U.S. at 336. "When a court of appeals sidesteps this process by first deciding the merits of an appeal, and then justifying its denial of a COA based on its adjudication of the actual merits, it is in essence deciding an appeal without jurisdiction." Id. at 336-37.

For purposes of our threshold inquiry, we are cognizant that, under AEDPA, the district court was required, with limited exceptions described below, to defer to the state court's resolution of Thompson's claims. Those exceptions turn on the character of the state-court's ruling. Foster, 466 F.3d at 365.

First, on questions of law, as well as mixed questions of law and fact, the district court was required to defer to the state-court's decision unless it "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court". 28 U.S.C. § 2254(d)(1); see Miller, 404 F.3d at 913. The state-court's decision is considered contrary to clearly established federal law if it "reaches a legal conclusion in direct conflict with a prior decision of the Supreme Court or if it reaches a different conclusion than the Supreme Court based on materially indistinguishable facts". Miller, 404 F.3d at 913 (quoting Miniel v. Cockrell, 339 F.3d 331, 337 (5th Cir. 2003)) (internal quotation marks omitted).

Second, our threshold inquiry must recognize the district court's obligation to defer to the state-court's factual findings, unless they "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding". 28 U.S.C. § 2254(d)(2). Along that line, the district court was required to presume the state-court's factual findings were correct; Thompson had to rebut that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

Moreover, our threshold inquiry requires consideration of a COA request against the backdrop of the elements of Thompson's underlying constitutional

claim. See Miller, 404 F.3d at 913. Needless to say, meaningful review of the district court's ruling, for COA purposes, on whether Thompson made the requisite 28 U.S.C. § 2253(c)(2) "substantial showing of the denial of a constitutional right" requires our considering these elements.

In the light of the district court's well-reasoned and thorough opinion, and essentially for the reasons stated in it, reasonable jurists could not debate the district court's rulings–for either the reasonable-jurists or the reasonable-jurists/procedural standards. This is especially true in the light of Thompson's conclusory briefing for most of the 15 requested COAs. Nevertheless, we address each claim.

A.

As a threshold matter, Thompson complains that the district court erred in denying his motions for factual development of the record. He seeks remand or a stay to develop the factual basis for several of his 15 claims. The district court denied his motions for expansion of the record, discovery, and an evidentiary hearing "because he failed to identify the evidence he wanted to produce, he did not show good cause for discovery, and did not show that he had diligently attempted to develop the record in state court". Thompson, No. 4:06-CV-148 (21 Dec. 2007) (discussing Thompson, No. 4:06-CV-148 (30 Nov. 2007) (denying motions)). Such denials are reviewed for abuse of discretion. See, e.g., In re Liljeberg Enters., Inc., 304 F.3d 410, 433 n.43 (5th Cir. 2002) (expansion of the record) (citation omitted); Clark v. Johnson, 202 F.3d 760, 766 (5th Cir. 2000) (discovery and evidentiary hearing).

At issue are only Thompson's COA requests. These alleged procedural errors are not phrased as COA requests, but they bear upon his requests. We consider them here for purposes of ruling on those COA requests. See Reyes v. Quarterman, 195 F. App'x 272, 278-79 & n.2 (5th Cir. 2006) (per curiam) (unpublished) (considering procedural issues before addressing COA requests);

Clark, 202 F.3d at 765-68 (considering procedural issues in context of COA requests). Most of those requests are inadequately briefed; nevertheless, we will address each request.

1.

First, Thompson sought expansion of the record with "the following materials, including but not limited to . . . (1) Letters predating the filing of the petition in district court; (2) Documents; (3) Exhibits; (4) Answers under oath; [and] (5) Written Interrogatories propounded/approved by the judge (if so directed)". Thompson's motion identifies no specific documents. As the district court found: "Thompson's motion makes no effort to show what omissions exist in the record, . . . specific material he wants to include, or why that material is necessary. . . . [It] is, in essence, a general discovery request". Thompson, No. 4:06-CV-148 (30 Nov. 2007).

As noted, as well as discussed below, Thompson also sought discovery. The district court considered the motions together, and denied them for "lack of specificity". Id. Accordingly, the district court did not abuse its discretion in denying expansion of the record.

2.

Second, Thompson sought discovery to obtain unspecified documents from an assistant district attorney and serve interrogatories on the jurors, defense counsel, assistant district attorney, and bailiff for his trial, as well as "others as necessary". As noted, this motion, too, was denied for "lack of specificity". Id.

"A party shall be entitled to invoke the processes of discovery available under the Federal Rules of Civil Procedure if, and to the extent that, the judge in the exercise of his discretion and for good cause shown grants leave to do so, but not otherwise." Bracy v. Gramley, 520 U.S. 899, 904 (1997) (quoting R. GOVERNING § 2254 CASES 6(a)). "'[W]here specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed,

be able to demonstrate that he is . . . entitled to relief, it is the duty of the court to provide the necessary facilities and procedures for an adequate inquiry'". Id. at 908-09 (quoting Harris v. Nelson, 394 U.S. 286, 300 (1969)). On the other hand, "[c]onclusionary allegations are not enough to warrant discovery under Rule 6 of the Federal Rules Governing Section 2254 Petitions; the petitioner must set forth specific allegations of fact. Rule 6 . . . does not authorize fishing expeditions". Ward v. Whitley, 21 F.3d 1355, 1367 (5th Cir. 1994) (citations omitted); see also Murphy v. Johnson, 205 F.3d 809, 814 (5th Cir. 2000) (finding no abuse of discretion).

As discussed, the district court ruled the motions "lack[ed] the necessary specificity". Thompson, No. 4:06-CV-148 (30 Nov. 2007). As such, Thompson did not "point to specific evidence that once existed and may continue to exist that holds the potential to exonerate him. . . . [And he] has not shown any likelihood that physical evidence exists that would render his request for information . . . more than a 'fishing expedition'". Reed v. Quarterman, 504 F.3d 465, 477 (5th Cir. 2007) (citation omitted). Accordingly, it was not an abuse of discretion to deny discovery. See id. (finding no abuse of discretion); United States v. Webster, 392 F.3d 787, 802 (5th Cir. 2004) (denying COA on denial of discovery because petitioner "failed to identify, with specific allegations, any dispositive factual disputes").

3.

Third, Thompson sought an evidentiary hearing. His motion maintained: he did not receive a full, fair evidentiary hearing in state court; and "[t]he facts in dispute from the state trial court are the effective assistance of the trial counsel[,] the failure to disclose relevant Brady v. Maryland information . . . [, and] the failure of the trial court to conduct a hearing on a potentially racist comment by a jury member". The district court ruled the motion "lack[ed]

specificity and fail[ed] to make the necessary showing that such development is permitted by [AEDPA] or necessary for the proper adjudication of the claims".

Thompson now asserts the lack-of-specificity denial of his motion is erroneous because the state court did not hold a "true hearing" and specificity "is impossible to provide" without discovery. He does not challenge the district court's ruling he failed to show such factual development would be permitted by AEDPA or to provide sufficient specificity.

> Under 28 U.S.C. § 2254(e)(2), an evidentiary hearing is only appropriate when "(A) the claim relies on–(i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense".

Comeaux v. Cain, 204 F. App'x 471, 474 n.4 (5th Cir. 2006) (holding district court erred in granting hearing where petitioner "clearly cannot meet these requirements") (quoting 28 U.S.C. § 2254(e)(2)) (emphasis added).

As Thompson does not show, or attempt to show, that he meets § 2254(e)(2)(A)'s requirements, the denial of an evidentiary hearing was not an abuse of discretion.

### B.

As stated, Thompson seeks a COA on 15 issues. They relate to: whether his capital-murder conviction or death sentence violates the Constitution (his issues 1, 2, & 4); whether the State suppressed exculpatory evidence in violation of his due-process rights (his issue 3); whether the trial court's procedural and evidentiary errors violated his Constitutional rights (his issues 6, 9, & 15); and whether his counsel's assistance was ineffective, in violation of his Sixth Amendment right (his issues 5, 7-8, & 10-14). As stated above and discussed

below, none satisfies the above-defined reasonable-jurists or reasonable-jurists/procedural standards for obtaining a COA.

1.

Initially, Thompson seeks a COA for his three claims that his conviction and sentence violate the Constitution.

a.

First, Thompson seeks a COA on whether he is factually innocent of capital murder, so that his conviction violates due process. Relying on Butler's conviction for only felony murder and citing Tison v. Arizona, 481 U.S. 137 (1987), he asserts he cannot be held liable for capital murder because: "The state . . . cannot hold the vicarious liability of a party to a higher standard than the actual liability of the true perpetrator"; and he did not shoot the victim and was not responsible for Butler's actions. (Emphasis in original.)

Tison, however, holds the imposition of the death penalty upon a major participant in a felony who showed reckless indifference to human life is not a violation of the due-process clause. 481 U.S. at 158. Instead, the Constitution requires that a death sentence "be tailored to [a defendant's] personal responsibility and moral guilt". Enmund v. Florida, 458 U.S. 782, 801 (1982). And, under Texas law, Thompson can be criminally responsible for capital murder even if Butler, who fired the fatal shot, is not. See TEX. PENAL CODE § 7.02(a) (defendant intended to kill someone during the aggravated robbery and solicited, encouraged, directed, or aided his accomplice, who also had that intent, to do so), (b) (defendant conspired to commit aggravated robbery and the death was a consequence he should have anticipated); Ex parte Thompson, 179 S.W.3d at 552-54.

The state-habeas trial court ruled Butler's factual-innocence claim was a sufficiency-of-the-evidence claim, which is not reviewable in state-habeas proceedings. Ex parte Thompson, 179 S.W.3d at 551 (adopting state-habeas trial

court's findings of fact and conclusions of law). On the other hand, the TCCA ordered supplemental briefing on this issue. Ultimately, the TCCA held the jury could have convicted Thompson under any of three theories and had sufficient evidence to find him guilty of capital murder, and also adopted the state-habeas trial court's ruling. Id. at 551-57.

The district court held: Thompson did not show any of those three theories violates due process as described in Enmund, 458 U.S. 782, and Tison, 481 U.S. 137; and "the Constitution does not require that Thompson's conviction and sentence be less severe than Butler's". Thompson, No. 4:06-CV-148 (30 Nov. 2007).

b.

Next, Thompson seeks a COA on whether his capital-murder conviction or resulting death sentence, in the light of Butler's felony murder conviction and less-than-death sentence, violates due process or equal protection. He asserts the Constitution is violated because Butler was convicted of only felony murder and was not sentenced to death. As support, he cites Hopkins v. Reeves, 524 U.S. 88, 94 (1998) (stating death penalty cannot be imposed where defendant "was a minor participant in the crime and neither intended to kill nor had shown reckless indifference to human life" (citations omitted)), and Enmund, 458 U.S. at 797 (holding Eighth Amendment does not allow imposition of the death penalty on one who does not kill, attempt to kill, or intend or contemplate that a killing would occur). Thompson relies, however, on Butler's felony murder conviction. He does not contend that he was a minor participant who did not attempt to kill, intend that a killing occur, or show reckless indifference to human life.

As discussed above, the Constitution is not violated where, as here, the focus was on the defendant's actions and intent. See Enmund, 458 U.S. 782; Tison, 481 U.S. 137. In that regard, the TCCA ruled Thompson's conviction and

12

sentence did not violate the Constitution because sufficient evidence showed he was a major participant in, and showed reckless indifference to human life during, the aggravated robbery. Ex parte Thompson, 179 S.W.3d at 551 (adopting state-habeas trial court's findings of fact and conclusions of law). Similarly, the district court ruled Thompson's Constitutional rights were not violated because "his conviction was based on his own criminal culpability". Thompson, No. 4:06-CV-148 (30 Nov. 2007).

2.

Thompson requests a COA for his claim that the State's suppression of evidence–Butler's statement to investigators that he (Butler) did not intend to kill the victim–violated Thompson's due-process rights under Brady v. Maryland, 373 U.S. 83 (1963).

Brady held: "[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment". Id. at 87. Our court has made clear, however, that, "when information is fully available to a defendant at the time of trial and his only reason for not obtaining and presenting the evidence to the Court is his lack of reasonable diligence, the defendant has no Brady claim". United States v. Brown, 628 F.2d 471, 473 (5th Cir. 1980) (citations omitted); see also United States v. Runyan, 290 F.3d 223, 246 (5th Cir. 2002) (citation omitted).

The TCCA held Thompson failed to show the State violated Brady by withholding Butler's statement because Thompson's trial counsel testified (via affidavit attached to the State's response in state-habeas proceedings) that he reviewed Butler's statement and spoke with him in preparation for Thompson's trial. Ex parte Thompson, 179 S.W.3d at 551 (adopting state-habeas trial court's findings of fact and conclusions of law). In fact, as the district court noted, Thompson apparently waived this claim in his state-habeas proceedings, after the State introduced his counsel's affidavit, by conceding the claim was "without

merit in that [Thompson's] trial counsel had access to Butler's custodial statement".

Thompson does not contest the affidavit, access to the statement, or waiver of the claim. (Moreover, Thompson also abandoned this claim by failing to brief it.)

3.

Thompson seeks a COA for his claims that three procedural and evidentiary rulings violated his Constitutional rights.

a.

Thompson requests a COA on whether the trial court's failure to investigate a juror's alleged statement resulted in Thompson's being tried by a biased jury, in violation of his due-process rights under Morgan v. Illinois, 504 U.S. 719 (1992). During the punishment phase of Thompson's trial, a defense witness reported that, as he stepped down after testifying about Thompson, he overheard a male juror say "poor little black boy". The trial court held a hearing, and the witness testified he interpreted it as a racist comment. The trial court, however, denied defense counsel's request to ask each male juror if he made the comment, and, if so, whether he harbored any racial prejudice.

Citing Remmer v. United States, 347 U.S. 227 (1954), Thompson maintains no hearing was held, and complains that his counsel should have been permitted to interrogate the male jurors. Remmer, a jury-tampering case, holds: "The trial court . . . should determine the circumstances, the impact thereof upon the juror, and whether or not it was prejudicial, in a hearing with all interested parties permitted to participate". Id. at 229-30. "[D]eterminations made in Remmer-type hearings will frequently turn upon testimony of the juror in question". Smith v. Phillips, 455 U.S. 209, 217 n.7 (1982).

On the other hand, trial courts have wide discretion to control the flow of trial, and are not required to conduct a hearing on juror misconduct – as opposed

14

to jury tampering. See, e.g., United States v. Webster, 750 F.2d 307, 338 (5th Cir. 1984). "In determining whether to conduct a hearing in [a jury misconduct case,] the court must balance the probable harm" from emphasizing the misconduct against the likely prejudice from the misconduct. Id. (quoting United States v. Chiantese, 582 F.2d 974, 980 (5th Cir. 1978)) (alteration in original). The ultimate inquiry is whether "the intrusion affect[ed] the jury's deliberations and thereby its verdict". United States v. Olano, 507 U.S. 725, 739 (1993).

On direct appeal, the TCCA found "the statement that the witness heard is not a clear manifestation of racial bias". Thompson, 2003 WL 21466925, at *2. It noted the statement could have been referring to the witness, or even if not, its underlying basis could have been sincerity or irony. Id. It denied the claim, ruling: "Because defense counsel did not diligently question the jurors about racial bias during voir dire, an alleged bias manifested later does not constitute juror misconduct". Id. "[V]oir dire examination is the time to uncover potential prejudice or bias in prospective jurors . . . and . . . a defendant who begins the inquiry in the middle of the trial is not acting timely". Id. at *1.

Under Texas law, as recognized by the district court, "if a defendant later 'wishe[s] to show bias on the part of a juror, [the] proper remedy [is] a motion for new trial with an accompanying affidavit by a juror showing such bias'". Thompson, No. 4:06-CV-148 (30 Nov. 2007) (quoting Norman v. State, 588 S.W.2d 340, 347 (Tex. Crim. App. 1979)) (alteration in original). Thompson's new-trial motion (from his trial, but, as noted, found only in his state-habeas record), however, does not mention juror bias. The district court noted: Thompson's claim speculates that further inquiry would have revealed harmful, racial prejudice; and the state trial court implicitly found no jury bias threatened the fairness of Thompson's punishment-phase. Id.

The district court held Thompson had not met his burden to show the TCCA's denial of this claim was unreasonable under AEDPA. Id. Thompson

does not challenge these rulings, urging only that the trial court's denying a hearing was "harmful".

b.

Second, Thompson seeks a COA for his claim that the trial court lowered the State's burden of proof on the second special issue during sentencing (in violation of his Sixth, Eighth, and Fourteenth Amendment rights), by stating, during voir dire, that the jurors would be asked if Thompson "should have anticipated that a human life would be taken". (Emphasis added.) There was no contemporaneous objection made to the court's statement. The second special issue submitted to the jury asked if Thompson "actually caused the death[,] . . . intended to kill [the victim] or another, or that he anticipated that a human life would be taken".

On direct appeal, the TCCA denied relief because "[Thompson] failed to object to the trial court's voir dire of the jury, therefore failing to preserve this error for review". Thompson, 2003 WL 21466925, at *7 (citations omitted). The district court ruled it could not consider this claim because it was procedurally barred; and that, even if it were not, the claim failed because the trial court's special-issue instructions during the punishment-phase did not include the contested "should have" language. Thompson, No. 4:06-CV-148 (30 Nov. 2007).

Here, Thompson failed to brief this claim; therefore, it is abandoned.

c.

Third, Thompson seeks a COA for whether the state trial court violated his Sixth Amendment right to a fair trial by admitting an officer's testimony.

During the punishment phase of trial, the jury heard a recording of Thompson's statements to officers following his arrest, explaining, inter alia, the robbery (and others he admitted committing) as God's punishment of members of certain ethnic groups operating businesses in his community. Following the recording, one of those officers was asked: "Did you have a feeling, sir, that he

16

was telling the truth about this philosophy of his?" The officer responded, "Yes". Thompson's counsel's objection to this testimony as speculative was overruled.

On direct appeal, Thompson asserted that the officer's opinion about Thompson's truthfulness was inadmissible expert testimony. The TCCA held this issue was not preserved for appeal because Thompson's objection at trial was made on different grounds. Thompson, 2003 WL 21466925, at *1.

The district court held this claim was procedurally barred, because Texas' rule requiring Thompson to have made the same objection at trial as raised on appeal, in order to preserve the issue for appeal, is "an adequate and independent state ground that procedurally bars federal habeas review of [this claim]". Thompson, No. 4:06-CV-148 (30 Nov. 2007) (quoting Fisher v. State, 169 F.3d 295, 300 (5th Cir. 1999)). Although Thompson maintains his objection at trial was sufficient to preserve it for appeal, the district court stated: "Federal courts generally do not assess whether a state court improperly applied its own procedural law". Id. (citing Estelle v. McGuire, 502 U.S. 62, 68 (1991)). The district court held, alternatively, that, even if the merits were reached, Thompson had not shown the testimony made his trial unfair so as to entitle him to habeas relief. Id. (citing Little v. Johnson, 162 F.3d 855, 862 (5th Cir. 1998) ("In habeas actions, this court does not sit to review the mere admissibility of evidence under state law."); Shaw v. Estelle, 686 F.2d 273, 275 (5th Cir. 1982)).

4.

Last, Thompson seeks a COA for each of the following eight contentions that he received ineffective assistance of counsel (IAC) under the Sixth Amendment from his trial counsel:

(1) consenting to the dismissal of a prospective juror;
(2) being absent during the voir dire of a prospective juror;
(3) ignoring available defensive strategies, including failing to obtain and introduce favorable expert testimony or introduce Butler's "I had no intent to kill" statement;

(4) failing to request a lesser-included-offense instruction;
(5) failing to investigate and present mitigating evidence;
(6) failing to object to good-character-of-the-victim evidence;
(7) discussing Thompson's extraneous offenses in closing argument; and
(8) misstating the jury's sentencing duty in his punishment-phase closing argument.

In addition, he seeks a COA on the claim that these errors cumulatively amount to IAC.

In state court, to make a substantial IAC showing, Thompson was required to establish both:  (1) his counsel's deficient performance; and (2) resulting prejudice.  Strickland v. Washington, 466 U.S. 668, 689 (1984).  Of course, for habeas review under AEDPA, the state court's performance and/or prejudice rulings are generally reviewed only to determine whether the state-court decision is unreasonable, not whether, in federal court, petitioner has shown each IAC prong.  E.g., Schaetzle v. Cockrell, 343 F.3d 440, 443-44 (5th Cir. 2003).  Generally, as stated, that task must be accomplished in state court.  Id.

In state court, to establish deficient performance, Thompson had to "show that counsel's representation fell below an objective standard of reasonableness".  Strickland, 466 U.S. at 687-88.  Judicial scrutiny of counsel's performance must be "highly deferential", and courts must make every effort "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time".  Id. at 689.  There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  Id.  Indeed, "[a] conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness".  Crane v. Johnson, 178 F.3d 309, 314 (5th Cir. 1999) (citation and internal quotation marks omitted).

In state court, to establish prejudice, Thompson had to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome". Strickland, 466 U.S. at 694.

a.

First, Thompson seeks a COA for his claim that his counsel's failure to object to the dismissal of a prospective juror was IAC. After the State and defense counsel agreed to dismiss this potential juror, who would have had to withdraw from her college classes in order to serve on the jury, Thompson told the trial court he agreed with the potential juror's dismissal.

On direct appeal, the TCCA ruled: in the light of Thompson's consenting to the potential juror's dismissal, Thompson failed to show his counsel's agreement was "deficient performance, much less prejudicial performance". Thompson, 2003 WL 21466925, at *3. The district court denied relief, noting Thompson did not contest his consent to the dismissal. Thompson, No. 4:06-CV-148 (30 Nov. 2007).

b.

Second, Thompson seeks a COA for his claim that his counsel's absence during the State's voir dire of a prospective juror constituted IAC. As evidence of his counsel's absence, he cites the State's saying, "You met Mr. Greenlee [defense counsel] and Connie [defense co-counsel] and Casey [co-prosecutor] yesterday. They're out right now, but they'll be back in". Defense counsel conducted his voir dire of that juror immediately following the State's.

On direct appeal, the TCCA denied this claim because "the record does not support the contention that both defense counsel missed [the] voir dire". Thompson, 2003 WL 21466925, at *3. It declared the State's statement ambiguous and cited the lack of other evidence indicating their absence. Id.

In denying relief, the district court found Thompson "made no effort to substantiate his claim that trial counsel 'abandoned' him during jury selection". Thompson, No. 4:06-CV-148 (30 Nov. 2007). Thus, Thompson failed to refute the state court's findings by the requisite clear and convincing evidence. In addition, he makes no attempt to do so here.

c.

Third, Thompson seeks a COA for his IAC claim that his right to counsel was violated by his trial counsel's failure to investigate, prepare, or employ a successful strategy, as reflected by his failure to: (1) obtain or introduce favorable psychiatric testimony; or (2) introduce Butler's statement that he (Butler) did not intend to kill the victim and urge Thompson's innocence due to Butler's lacking that intent.

At trial, counsel chose not to present expert testimony on Thompson's future dangerousness, explaining to the trial court that the appointed expert's opinion, based on Thompson's statements to her, was unfavorable. During state-habeas proceedings, Thompson's trial counsel submitted an affidavit to that effect ("the psychiatric evaluation . . . was anything but mitigating"). That affidavit also explained that the failure to introduce Butler's statement at trial was also a strategic decision ("nothing in [Butler's] statement caused me to change my overall defensive strategy, because they planned the robberies and brought guns").

i.

For the failure to introduce expert testimony, raised in the state-habeas proceedings, the TCCA found:

> [T]he trial court granted defense counsels' . . . motion for an independent psychiatric evaluation of [Thompson]. . . . [That expert] evaluated [Thompson] . . . and [Thompson] admitted to [her] that he committed robberies and that he would continue the same course of action if he were given a gun. . . . [The expert] considered [Thompson] a sociopath who cared only for his aunt and had no

respect for others' lives. . . . [D]efense counsel elected not to present the testimony of [that expert] because her testimony was not beneficial to the defense. . . . [D]efense counsels' punishment strategy was to demonstrate . . . that [Thompson's] age and lack of criminal record was sufficiently mitigating to warrant an affirmative answer to the third special issue.

Ex parte Thompson, 179 S.W.3d at 551 (adopting state-habeas trial court's findings of fact and conclusions of law). The TCCA ruled this performance was not deficient or prejudicial, noting "counsels' voir dire and trial strategy were not premised on the results of [Thompson's] psychiatric evaluation". Id.

Thompson contends counsel should have learned the expert's opinion before the eve of trial, in order for a different expert to be retained. The district court denied relief, finding: "The record defeats any inference that, even if trial counsel had [the expert's] opinion before trial, it would have changed the defensive strategy". Thompson, No. 4:06-CV-148 (30 Nov. 2007). Thompson provides no evidence that another expert's opinion would have differed. He challenges these rulings by urging only: the court cannot know counsel's strategy would have remained the same if the expert's unfavorable opinion had been learned sooner. There is no support in the record for this proposition, which is, in fact, rebutted by trial counsel's affidavit. Nor does the record support that the expert's opinion was not learned until the eve of trial.

ii.

Trial counsel's failure to introduce Butler's statement (that Butler did not intend to kill the victim) was raised in Thompson's state-habeas petition. As discussed above, Thompson could have been found guilty even if Butler did not intend to kill the victim. See TEX. PENAL CODE § 7.02(a)(1) (if he intended to kill and aided Butler's shooting), (b) (if he conspired to commit aggravated robbery and the death was a consequence he should have anticipated); Ex parte Thompson, 179 S.W.3d at 552-54.

Based on trial counsel's affidavit, the TCCA found: "[Trial counsel] made a strategic choice not to argue that the shooting . . . was unintentional, even though he had reviewed co-defendant Butler's statement, because counsel found the stronger course of action was to argue that [Thompson] should not have anticipated Butler's shooting". Ex parte Thompson, 179 S.W.3d at 551 (adopting state-habeas trial court's findings of fact and conclusions of law). It held Thompson failed to show deficient performance or prejudice, stating: "[T]hat another attorney might have pursued [a] different strategy will not support a finding of ineffective assistance of counsel". Id.

The district court ruled: "The evidence strongly supported the conclusion that Thompson intended to kill, regardless of Butler's intent. Thompson has not shown that the state court's conclusion that trial counsel did not provide ineffective assistance was contrary to, or an unreasonable application of, federal law". Thompson, No. 4:06-CV-148 (30 Nov. 2007).

Thompson contests that his counsel chose not to introduce the statement because it reinforced that the men planned the robberies and supported an inference that they intended to kill, as trial counsel stated in his affidavit. Thompson contends that counsel "failed to understand the significance of [Butler's] statement or simply failed to pursue it in a timely way".

Thompson also urges that discovery should have been permitted by the district court "[t]o resolve a potential dispute over the use of [Butler's] statement". As explained above, Thompson's motions for factual development failed to, inter alia, convey what "potential dispute" exists that could entitle him to relief; and the denial of discovery was not an abuse of discretion.

d.

Fourth, Thompson seeks a COA for his claim that his trial counsel's failure to object to evidence of the victim's good character deprived him of his Sixth Amendment right to effective counsel. During the guilt-innocence phase of his

22

trial, witnesses testified that both store clerks were nice, good people; and that the victim had shielded a bystander from bullets during the robbery.

On direct appeal, the TCCA noted the failure to object "may have been strategic". Thompson, 2003 WL 21466925, at *6. In denying the claim, it ruled Thompson had not shown the evidence was inadmissible or that a successful objection would have affected his trial's outcome. Id.

The district court held: although Thompson cited Payne v. Tennessee, 501 U.S. 808 (1991), for the proposition that "a victim's general character should not be an issue in a trial, especially in guilt innocence", Thompson had not shown how his counsel could have excluded this testimony. Thompson, No. 4:06-CV-148 (30 Nov. 2007).

Thompson asserts the evidence is inadmissible under Payne because this is an extraordinary circumstance where his character should not be compared to the victim's, because he did not shoot the victim. Payne dealt, however, with character evidence introduced during the sentencing phase of a trial, and held such evidence may be relevant and admissible as to the jury's decision. Payne, 501 U.S. at 827. It also states: "In the event that evidence is introduced that is so unduly prejudicial that it renders the trial fundamentally unfair, the Due Process Clause of the Fourteenth Amendment provides a mechanism for relief". Id. at 825. Thompson has made no showing that this testimony rendered his trial fundamentally unfair.

e.

Fifth, Thompson seeks a COA for his claim that his trial counsel was ineffective for failing to request an instruction on felony murder, forcing the jury to convict him of an offense more serious than he committed or set him free, in violation of his due-process rights under Beck v. Alabama, 447 U.S. 625 (1980) (holding death penalty is unconstitutional where evidence supported a lesser-included offense on which the jury was not instructed). Thompson makes no

effort, however, to show the jury could have found he was guilty of felony, rather than capital, murder. As noted, the jury was instructed it could find Thompson guilty of capital murder if he: (1) specifically intended to kill, and did kill, the victim during the robbery; (2) intended to kill the victim by "soliciti[ing], encourag[ing], direct[ing], aid[ing], or attempt[ing] to aid" Butler's shooting him; or (3) conspired with Butler to commit the robbery and Butler's shooting the victim "was committed in furtherance of the conspiracy and was an offense that [Thompson] should have [] anticipated". See Ex parte Thompson, 179 S.W.3d at 552.

This claim was denied on direct appeal, the TCCA ruling that Thompson had not shown a reasonable probability of a different outcome, had the lesser-offense instruction been requested. Thompson, 2003 WL 21466925, at *4-5. It expressed no opinion on whether counsel's performance was deficient (noting the absence of an affidavit from him) or whether the evidence at trial entitled Thompson to such an instruction. Id. at *5.

On state-habeas review, the State introduced Thompson's trial counsel's earlier-discussed affidavit stating that, in the light of the evidence of Thompson's conduct and confessions, counsel decided not to challenge the State's evidence of Thompson's intent to kill or to request an instruction on unintentional murder because such an instruction was not supported by the evidence. The TCCA ordered supplemental briefing on this claim.

In its subsequent opinion, the TCCA noted that the claim was denied on direct appeal because the direct-appeal record did not contain "sufficient information concerning trial counsel's strategy", but that the state-habeas record did. Ex parte Thompson, 179 S.W.3d at 557. The TCCA held Thompson's counsel was not ineffective because, considering the evidence at trial, Thompson was not entitled to a felony-murder instruction. Id. at 558-60. It ruled: Thompson "fails to point to any evidence that affirmatively shows [Thompson]

24

did not intend the death of [the victim] or another"; and the evidence of his "intent to kill is not merely sufficient, it is overwhelming". Id. at 559. It also noted that, if Thompson's counsel had challenged the evidence of his intent to kill, "the State would presumably walk right through that door with the evidence of two extraneous capital murders [Thompson] committed to prove that he had a murderous intent on this occasion just as he had on those two other occasions". Id. at 560.

The district court, after reviewing Texas law, trial counsel's affidavit, and the TCCA's decision, agreed. Thompson, No. 4:06-CV-148 (30 Nov. 2007). It ruled: "Trial counsel made a strategic decision not to seek a felony murder instruction. The [TCCA's] affirming of that decision is amply supported. There is no basis for relief . . . ." Id. Here, Thompson fails to point to evidence that could show he lacked the intent to kill, or otherwise demonstrate his entitlement to such an instruction.

f.

Sixth, Thompson seeks a COA on his IAC claim that his counsel's failure to investigate and present mitigating evidence for the punishment phase of trial violated his Sixth Amendment right under Wiggins v. Smith, 539 U.S. 510 (2003). Two affidavits attached to his federal habeas petition (from his mother and grandmother) and four filed with his subsequent request for a stay (from family and friends) attest to his difficult childhood and good character. Thompson asserts this claim was presented to the state courts, without the six affidavits, as part of his IAC-for-failure-to-investigate claim in state-habeas proceedings. This claim also appears to have been included on direct appeal, as part of his IAC-in-the-punishment-phase claim (discussed in the next subpart).

In the alternative, he contends the district court erred by denying his request for a stay so that he could exhaust this claim in state court. Again, a denial of such a stay is reviewed for abuse of discretion. Brewer v. Johnson, 139

25

F.3d 491, 492-93 (5th Cir. 1998) (citations omitted). A stay should only be granted if: (1) the petitioner had good cause for his failure to exhaust; (2) his claim is not plainly meritless; and (3) he has not engaged in an intentional delay. See, e.g., Rhines v. Weber, 544 U.S. 269, 277-78 (2005). The district court noted Thompson made none of those showings. Thompson does not explain why he did not file his motion for a stay until several months after filing his federal habeas petition. Thus, the district court did not abuse its discretion in denying a stay.

The state-habeas trial court made the following, above-quoted findings with regard to his IAC-for-failure-to-investigate claim:

> [T]he trial court granted defense counsels' . . . motion for an independent psychiatric evaluation of [Thompson]. . . . [That doctor] evaluated [Thompson] . . . and [Thompson] admitted to [her] that he committed robberies and that he would continue the same course of action if he were given a gun. . . . [The doctor] considered [Thompson] a sociopath who cared only for his aunt and had no respect for others' lives. . . . [D]efense counsel elected not to present the testimony of [that doctor] because her testimony was not beneficial to the defense. . . . [D]efense counsels' punishment strategy was to demonstrate . . . that [Thompson's] age and lack of criminal record was sufficiently mitigating to warrant an affirmative answer to the third special issue.

Ex parte Thompson, 179 S.W.3d at 551 (adopting state-habeas trial court's findings of fact and conclusions of law).

The district court noted Thompson: "never presented this claim in state court" and "concedes that 'any subsequent state-habeas writ would likely be dismissed [as successive] under the state's . . . abuse of the writ doctrine'". Thompson, No. 4:06-CV-148 (30 Nov. 2007). Thus, the claim is unexhausted and would be procedurally barred. Id.; see also Hughes v. Quarterman, 530 F.3d 336, 342 (5th Cir. 2008) (explaining claim must be first considered by state courts, and its dismissal under the abuse of the writ doctrine is an independent and adequate state ground for denial that procedurally bars it from federal habeas review) (citations omitted).

26

Nevertheless, the district court proceeded to consider the merits of the claim. Thompson, No. 4:06-CV-148 (30 Nov. 2007). It found that trial counsel was familiar with Thompson's background, and that three defense witnesses testified to Thompson's good character and living with relatives while his parents were incarcerated. Id. It also noted that trial counsel's affidavit, presented by the State during state-habeas proceedings, stated: "there simply was not much in the way of mitigation to provide" and "Mr. Thompson did not want [his attorneys] to present any evidence in the way of mitigation". Id. It noted Thompson did not contradict his trial counsel's statement that he did not want his attorneys to introduce mitigating evidence, and, thus, could not show deficient performance. Id. Further, in the light of the earlier-described six new affidavits, it held Thompson had not shown "a reasonable probability of a different result had counsel adopted [Thompson's] proposed punishment phase strategy". Id.

As in district court, Thompson makes no effort to overcome the procedural bar or contest his trial counsel's affidavit. He instead urges the district court erred in ruling he did not show a reasonable probability that his mitigation evidence would have affected his sentence.

g.

Seventh, Thompson requests a COA on whether his trial counsel's failure to object to the admission of "the many extraneous offenses that the State was intent on introducing at [the] punishment" phase constituted IAC. The State's punishment-phase evidence showed Thompson confessed to committing two other murders during four similar aggravated robberies (with Butler, during the week preceding the victim's death).

Thompson's counsel objected, initially and unsuccessfully, to the admission of Thompson's confessions on the basis that they were not voluntary. Thompson maintained on direct appeal that the confessions were admitted without

objection, because counsel's original objections (voluntary intoxication) were abandoned at the pre-trial hearing on admissibility. During the punishment-phase of trial, counsel did not dispute the truthfulness of Thompson's confessions, instead characterizing Thompson's conduct as an aberration in an otherwise law-abiding life. The jury was instructed to consider the other offenses "only if the extraneous crime or bad act has been shown by the State beyond a reasonable doubt to have been committed by [Thompson]".

This issue was raised on direct appeal and in state-habeas proceedings, in the context of whether this failure, coupled with counsel's stating that the jury could consider the extraneous offenses, lowered the State's burden of proof so as to constitute IAC. See Thompson, 2003 WL 21466925, at *6-7. The TCCA ruled, on direct appeal: Thompson failed to establish either deficient or prejudicial performance. Id. at *7.

The district court determined that, under AEDPA, the state-court decision was not unreasonable because Thompson confessed to the extraneous offenses and provided no basis to challenge the admission of evidence to prove his involvement in them. Thompson, No. 4:06-CV-148 (30 Nov. 2007).

Thompson urges: even though he admitted to committing these offenses, his counsel should have requested a hearing to determine beyond a reasonable doubt that he committed them and minimize or factually challenge them during the punishment phase. He cites no authority for this proposition.

h.

Eighth, Thompson seeks a COA on his IAC claim that his co-counsel's closing during the punishment phase lowered the State's burden of proof on the second special issue. That issue required the jury to find Thompson "actually caused the death . . . [or] intended to kill [the victim] or another or that he anticipated that a human life would be taken". His co-counsel, in closing,

rephrased it this way: "that he's responsible for this killing in some kind of way".

The TCCA denied relief on this claim on direct appeal, ruling: co-counsel's statement was not deficient performance because, "[a]bsent evidence to the contrary, we must presume that counsel strategically decided to avert attention from the second special issue". Thompson, 2003 WL 21466925, at *7. It noted the jury was instructed according to Texas law.

On state-habeas, the TCCA noted this issue "need not be considered" because it had been decided on direct appeal, and held, in any event, that Thompson failed to show "deficient performance, much less harm", from the alleged error. Ex parte Thompson, 179 S.W.3d at 551 (adopting state-habeas trial court's findings of fact and conclusions of law).

The district court found: co-counsel's statement would not have lowered the burden of proof or changed the jury's special-issues verdict because the jury's instructions properly tracked Texas law. Thompson, No. 4:06-CV-148 (30 Nov. 2007).

i.

Finally, Thompson requests a COA on whether these eight claimed errors constitute IAC if considered cumulatively. He also relies on one of his trial counsel's "extensive disciplinary history", as presented in his state-habeas petition.

Thompson did not present this cumulative-error issue in his COA request in district court. Along that line, as discussed supra, before this court can consider a COA request (i.e., determine whether reasonable jurists could debate the district court's decision), a COA for that issue must have been denied by the district court. See, e.g., Brewer v. Quarterman, 466 F.3d 344, 346 (5th Cir. 2006), cert. denied, 128 S. Ct. 63 (2007); Whitehead v. Johnson, 157 F.3d 384, 388 (5th Cir. 1998). In other words, "lack of a ruling on a COA in the district court causes

this court to be without jurisdiction to consider" a COA belatedly requested here. Sonnier v. Johnson, 161 F.3d 941, 946 (5th Cir. 1998) (citation omitted).

III.

For the foregoing reasons, a COA is DENIED.