**Opinion filed January 30, 2009**



In The

# Eleventh Court of Appeals

_____

## No. 11-07-00105-CR

_____

## GEROID JERMAINE JANICE, Appellant

## V.

## STATE OF TEXAS, Appellee

**On Appeal from the 163rd District Court**

**Orange County, Texas**

**Trial Court Cause No. B060431-R**

### M E M O R A N D U M   O P I N I O N

The jury convicted Geroid Jermaine Janice[1] of capital murder, and the trial court assessed punishment by operation of law at confinement for life. We affirm.

Appellant presents four points of error. In the first point, he challenges the legal and factual sufficiency of the evidence. In his second point, he sets forth several alleged errors in the trial court's charge to the jury. In the third and fourth points of error, appellant complains of the trial

_____

[1]We note that appellant's middle name is shown in the indictment as "Jeremaine." However, appellant indicated at pretrial that "Jermaine" is the correct spelling of his middle name. Both the judgment and the notice of appeal reflect the correct spelling.

court's refusal to submit a charge on the lesser included offense of felony murder and a charge on "independent impulse."

*Sufficiency of the Evidence*

We will apply the following well-recognized standards of review to appellant's sufficiency challenges in his first point of error. To determine if the evidence is legally sufficient, we must review all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307 (1979); *Jackson v. State*, 17 S.W.3d 664 (Tex. Crim. App. 2000). To determine if the evidence is factually sufficient, we must review all of the evidence in a neutral light and determine whether the evidence supporting the verdict is so weak that the verdict is clearly wrong and manifestly unjust or whether the verdict is against the great weight and preponderance of the conflicting evidence. *Watson v. State*, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006); *Clewis v. State*, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996). Evidence is sufficient to support a conviction under the law of parties where the defendant is physically present at the commission of the offense and encourages the commission of the offense either by words or other agreement. *Beier v. State*, 687 S.W.2d 2, 3 (Tex. Crim. App. 1985).

The jury convicted appellant of capital murder based upon the following jury charge:

> If you find from the evidence beyond a reasonable doubt that on or about the 10th day of January, 2006, in the County of Orange, and State of Texas, there was a conspiracy between [APPELLANT] and HOWARD DEWAYNE WHITE to commit the offense of robbery of Chad Stephens, and you further find that in the attempt to carry out such conspiracy to commit the offense of robbery of Chad Stephens, and in the course of committing or attempting to commit the offense of robbery of Chad Stephens, HOWARD DEWAYNE WHITE did then and there, in furtherance of such conspiracy intentionally cause the death of an individual, Chad Stephens, by shooting the said Chad Stephens, and you further find that, though [APPELLANT] had no intent to commit murder, the murder should have been anticipated as a result of carrying out the conspiracy, then you will find [APPELLANT] guilty of capital murder as charged in the indictment.

Appellant argues that the evidence is insufficient to show that Howard Dewayne White intended to cause Chad Stephens's death, that a conspiracy to commit robbery existed, that the shooting occurred in furtherance of the conspiracy, or that appellant should have anticipated the shooting.

2

The record shows that appellant, White, and Conrad Petrie needed money and devised a plan to get the money from Stephens, who they thought would have cash because he "sold dope." According to appellant's statement, the trio agreed upon "hitting a lick," which "means robbing people for money," on Stephens. Appellant stated that he "came up with a ploy" of selling his Cadillac to Stephens "in order to give us a reason to get in [on] him at his house." After Stephens agreed to buy appellant's car for $800, the trio went to Stephens's home, where he lived with his fiancée Latisha Runnels. Petrie stayed in the car, and appellant and White went inside the house. According to Runnels, appellant and White followed Stephens into the bedroom even though Stephens had told them to "[h]old on" after he answered the door. Stephens got $800 out of his safe, which contained a large amount of cash and pills, and asked appellant to write out a receipt. Appellant wrote out a bill of sale for his car and signed it.

Runnels was also in the bedroom. She thought appellant and White were trying to signal each other, and she noticed appellant bend down and get a gun out of his pants leg. She also noticed that White had something pointed in the pocket of his hooded sweatshirt. Appellant and White moved closer. Runnels left the room, got Stephens's pistol, returned, and placed the pistol under a blanket on the bed without appellant or White noticing. Appellant and White said that they needed a ride home, and Stephens agreed to take them. All three men had stepped out of the bedroom momentarily when Stephens suddenly "flew" back into the bedroom – after being pushed or shoved. White was holding a gun to the back of Stephens's head. Runnels testified that appellant hit her in the back of the head and on her leg with his gun and that he pointed his gun at her. White told Stephens to open the safe, but Stephens instead dove onto the bed on top of Runnels. According to Runnels, appellant and White hit Stephens. Stephens managed to find his pistol and raised up with it. Appellant and White then ran through the house and out the front door. Several shots were fired as Stephens pursued appellant and White.

Upon exiting the house, White went to the left, and appellant went to the right. Runnels testified that both appellant and White fired at Stephens. Stephens remained in the doorway during the shooting until he was hit by a bullet coming from White's direction. According to Runnels, White ran back into the yard toward the house, knelt down a little, and fired. Stephens locked the door and stumbled to the couch, where he died shortly thereafter from a gunshot wound that entered

3

his upper left chest, went through both lungs and his heart, and exited on the right side of his mid-back area. In addition to the gunshot wound, the autopsy revealed multiple abrasions on Stephens's head and hands.

The two 9 mm shell casings found at the scene confirmed that White fired twice while standing near the curb of Stephens's yard. Two spent 9 mm bullets that appeared to have been fired from White's direction entered the house through the open doorway, went through a living room wall, and were recovered from the kitchen. The evidence also showed that Stephens fired at least two shots from his .45 caliber semiautomatic pistol. Based upon the location of one spent round fired from Stephens's pistol, Stephens fired at least once in White's direction.

Appellant denied firing any shots. He fled the scene but turned himself in several hours later. He led police to the location of the pistol that he had buried at a school not far from the scene of the offense. The pistol, a .32 caliber revolver, had one spent round underneath the hammer. However, no spent bullets from appellant's revolver were found at the scene.

Appellant testified at trial that the plan was to "rob" Stephens by pretending to sell him the car for $800, getting a ride home from Stephens, and forcing him to get out of the car. Appellant had a revolver, and he knew that White had a Glock pistol. Appellant testified that they were going to use the guns to "persuade" or force Stephens to get out of the car and that there was no plan to shoot or assault Stephens. According to appellant, things initially went as planned, and they were on their way out when White and Stephens began discussing the sale of some pills. White and Stephens then went back into the bedroom. After a couple of minutes, appellant went to see what was taking them so long. He saw White pull a gun out of his sock and hit Stephens "upside the head with it." A scuffle ensued between White and Stephens, during which time appellant pointed his gun at Runnels and moved closer into the bedroom. White let go of Stephens, and then appellant and White fled. Appellant heard shots but did not look back as he ran away. Appellant testified that he never intended to hurt anybody.

We hold that the evidence is both legally and factually sufficient to support the jury's verdict. Appellant was charged with and convicted of capital murder as a coconspirator pursuant to TEX.

4

PENAL CODE ANN. § 7.02(b) (Vernon 2003).[2] *See Ex parte Thompson*, 179 S.W.3d 549, 552 (Tex. Crim. App. 2005); *Fuller v. State*, 827 S.W.2d 919, 932-33 (Tex. Crim. App. 1992). Although appellant may not have had any intent to kill Stephens, White's acts of turning around, running back toward the house, pointing his gun at Stephens, firing the gun at least twice, and shooting Stephens in the chest are sufficient to show that White intentionally caused Stephens's death. White's intent may be discerned from his actions. The evidence is also sufficient to show that appellant and White had conspired to commit robbery, that the shooting occurred in furtherance of that conspiracy even if the robbery did not proceed as originally planned, that appellant participated in the robbery – even assaulting Runnels and pointing his gun at her, and that appellant should have anticipated the murder. Appellant and White each brought loaded guns with them to the robbery, and appellant testified that he knew Stephens would have a gun because he was a drug dealer. Appellant's first point of error is overruled.

*Jury Charge*

In his second point of error, appellant complains that the jury charge was erroneous and fundamentally flawed in the following ways: it (1) failed to include defensive issues and theories, (2) commented on the weight of the evidence, (3) assumed disputed facts to be true, (4) failed to accurately set forth appellant's role in the crime, (5) failed to accurately charge the jury regarding appellant's theories, (6) did not require the jury to make specific findings of fact regarding disputed factual issues, and (7) was overly broad and ambiguous. In the third point, appellant contends that the trial court erred by refusing to submit a charge on the lesser included offense of felony murder. In the fourth point, appellant argues that the trial court erred in refusing to charge the jury on "independent impulse."

A review of the entire jury charge reveals that it constituted a fair and impartial submission of the case, accurately instructed the jury on the law, properly applied the law to the facts adduced at trial, and required a unanimous verdict. The jury charge did not constitute a comment on the

---

[2]Section 7.02(b) provides:

> If, in the attempt to carry out a conspiracy to commit one felony, another felony is committed by one of the conspirators, all conspirators are guilty of the felony actually committed, though having no intent to commit it, if the offense was committed in furtherance of the unlawful purpose and was one that should have been anticipated as a result of the carrying out of the conspiracy.

5

weight of the evidence, did not assume disputed facts to be true, and was not overly broad and ambiguous. Contrary to appellant's assertion, a defendant is not entitled to a submission on every issue raised by his theories of the case. The submission of a theory that merely negates an element of the State's case is superfluous and impermissible. *Solomon v. State*, 49 S.W.3d 356, 368 (Tex. Crim. App. 2001). Furthermore, the court in *Solomon* specifically held that a charge on independent impulse would be improper because it simply negates the conspiracy liability element of the State's case. *Id.* Although a defendant may be entitled to an instruction on a defensive theory that does not merely negate an element of the State's case, the theories asserted by appellant are not affirmative defenses and are not enumerated in the Texas Penal Code. *See id.* Appellant's theories merely negated elements of the State's case. Appellant's second and fourth points of error are overruled.

With respect to appellant's request for an instruction on the lesser included offense of felony murder, we observe that a charge on a lesser included offense is required if (1) the lesser included offense is included within the proof necessary to establish the offense charged and (2) there is some evidence that would permit a rational jury to find that, if the accused is guilty, he is guilty of only the lesser offense. *Rousseau v. State*, 855 S.W.2d 666, 672-73 (Tex. Crim. App. 1993); *Royster v. State*, 622 S.W.2d 442, 446 (Tex. Crim. App. 1981). In this case, appellant requested a charge on felony murder. The first prong of the test is met because felony murder is a lesser included offense of capital murder. *Salinas v. State*, 163 S.W.3d 734, 741 (Tex. Crim. App. 2005); *Rousseau*, 855 S.W.2d at 673; *see* TEX. CODE CRIM. PROC. ANN. art. 37.09 (Vernon 2006); TEX. PENAL CODE ANN. § 19.02(b)(3) (Vernon 2003), § 19.03(a)(2) (Vernon Supp. 2008). The issue then is whether the record contains evidence satisfying the second prong of the test.

Felony murder differs from capital murder in that capital murder requires the intent to kill, whereas felony murder requires only an intent to commit the underlying offense and a death caused by the commission of an act clearly dangerous to human life. Sections 19.02(b)(3), 19.03(a)(2); *Santana v. State*, 714 S.W.2d 1, 9 (Tex. Crim. App. 1986). There is evidence that appellant did not fire the shot that killed Stephens and that appellant had no intent to kill Stephens. However, that is not dispositive because appellant was charged as a coconspirator and was responsible for the acts of White, the shooter. *See Salinas*, 163 S.W.3d at 741-42; *Santana*, 714 S.W.2d at 9. White's acts of turning around, running back toward the house, pointing his gun at Stephens, firing the gun at

least twice, and shooting Stephens in the chest show White's intent to kill and not merely the commission of an act clearly dangerous to human life. Thus, the evidence did not raise the issue of felony murder. *See Salinas*, 163 S.W.3d at 741-42; *Santana*, 714 S.W.2d at 9. Consequently, appellant was not entitled to an instruction on the lesser included offense of felony murder. Appellant's third point of error is overruled.

The judgment of the trial court is affirmed.


JIM R. WRIGHT

CHIEF JUSTICE


January 30, 2009

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
McCall, J., and Strange, J.