Opinion filed January 30, 2009











 
 
  
 
 







 
 
  
 
 




Opinion filed January 30,
2009

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh
Court of Appeals

                                                                 ____________

 

                                                          No. 11-07-00105-CR

                                                    __________

 

                              GEROID JERMAINE JANICE, Appellant

 

                                                             V.

 

                                        STATE
OF TEXAS, Appellee

 



 

                                         On
Appeal from the 163rd District Court

 

                                                         Orange
County, Texas

 

                                               Trial
Court Cause No. B060431-R

 



 

                                              M
E M O R A N D U M   O P I N I O N

 

The
jury convicted Geroid Jermaine Janice[1] of capital
murder, and the trial court assessed punishment by operation of law at
confinement for life.  We affirm.








Appellant
presents four points of error.  In the first point, he challenges the legal and
factual sufficiency of the evidence.  In his second point, he sets forth
several alleged errors in the trial court=s
charge to the jury.  In the third and fourth points of error, appellant
complains of the trial court=s
refusal to submit a charge on the lesser included offense of felony murder and
a charge on Aindependent
impulse.@  

                                                        Sufficiency
of the Evidence

We
will apply the following well-recognized standards of review to appellant=s sufficiency challenges in
his first point of error.  To determine if the evidence is legally sufficient,
we must review all of the evidence in the light most favorable to the verdict
and determine whether any rational trier of fact could have found the essential
elements of the crime beyond a reasonable doubt.  Jackson v. Virginia,
443 U.S. 307 (1979); Jackson v. State, 17 S.W.3d 664 (Tex. Crim. App.
2000).  To determine if the evidence is factually sufficient, we must review
all of the evidence in a neutral light and determine whether the evidence
supporting the verdict is so weak that the verdict is clearly wrong and
manifestly unjust or whether the verdict is against the great weight and
preponderance of the conflicting evidence.  Watson v. State, 204 S.W.3d
404, 414-15 (Tex. Crim. App. 2006); Clewis v. State, 922 S.W.2d 126, 129
(Tex. Crim. App. 1996).  Evidence is sufficient to support a conviction under
the law of parties where the defendant is physically present at the commission
of the offense and encourages the commission of the offense either by words or
other agreement.  Beier v. State, 687 S.W.2d 2, 3 (Tex. Crim. App.
1985).

The
jury convicted appellant of capital murder based upon the following jury
charge:

If
you find from the evidence beyond a reasonable doubt that on or about the 10th
day of January, 2006, in the County of Orange, and State of Texas, there was a
conspiracy between [APPELLANT] and HOWARD DEWAYNE WHITE to commit the offense
of robbery of Chad Stephens, and you further find that in the attempt to carry
out such conspiracy to commit the offense of robbery of Chad Stephens, and in
the course of committing or attempting to commit the offense of robbery of Chad
Stephens, HOWARD DEWAYNE WHITE did then and there, in furtherance of such conspiracy
intentionally cause the death of an individual, Chad Stephens, by shooting the
said Chad Stephens, and you further find that, though [APPELLANT] had no intent
to commit murder, the murder should have been anticipated as a result of
carrying out the conspiracy, then you will find [APPELLANT] guilty of capital
murder as charged in the indictment.

 

Appellant argues
that the evidence is insufficient to show that Howard Dewayne White intended to
cause Chad Stephens=s
death, that a conspiracy to commit robbery existed, that the shooting occurred
in furtherance of the conspiracy, or that appellant should have anticipated the
shooting.








The
record shows that appellant, White, and Conrad Petrie needed money and devised
a plan to get the money from Stephens, who they thought would have cash because
he Asold dope.@  According to appellant=s statement, the trio
agreed upon Ahitting a
lick,@ which Ameans robbing people for
money,@ on Stephens. 
Appellant stated that he Acame
up with a ploy@ of
selling his Cadillac to Stephens Ain
order to give us a reason to get in [on] him at his house.@  After Stephens agreed to
buy appellant=s car
for $800, the trio went to Stephens=s
home, where he lived with his fiancée Latisha Runnels.  Petrie stayed in the
car, and appellant and White went inside the house.  According to Runnels,
appellant and White followed Stephens into the bedroom even though Stephens had
told them to A[h]old
on@ after he answered
the door.  Stephens got $800 out of his safe, which contained a large amount of
cash and pills, and asked appellant to write out a receipt.  Appellant wrote
out a bill of sale for his car and signed it.

Runnels
was also in the bedroom.  She thought appellant and White were trying to signal
each other, and she noticed appellant bend down and get a gun out of his pants
leg.  She also noticed that White had something pointed in the pocket of his
hooded sweatshirt.  Appellant and White moved closer.  Runnels left the room,
got Stephens=s pistol,
returned, and placed the pistol under a blanket on the bed without appellant or
White noticing.  Appellant and White said that they needed a ride home, and
Stephens agreed to take them.  All three men had stepped out of the bedroom
momentarily when Stephens suddenly Aflew@ back into the bedroom B after being pushed or
shoved.  White was holding a gun to the back of Stephens=s head.  Runnels testified that appellant hit
her in the back of the head and on her leg with his gun and that he pointed his
gun at her.  White told Stephens to open the safe, but Stephens instead dove
onto the bed on top of Runnels.  According to Runnels, appellant and White hit
Stephens.  Stephens managed to find his pistol and raised up with it. 
Appellant and White then ran through the house and out the front door.  Several
shots were fired as Stephens pursued appellant and White.








Upon
exiting the house, White went to the left, and appellant went to the right. 
Runnels testified that both appellant and White fired at Stephens.  Stephens
remained in the doorway during the shooting until he was hit by a bullet coming
from White=s
direction.  According to Runnels, White ran back into the yard toward the
house, knelt down a little, and fired.  Stephens locked the door and stumbled
to the couch, where he died shortly thereafter from a gunshot wound that
entered his upper left chest, went through both lungs and his heart, and exited
on the right side of his mid-back area.  In addition to the gunshot wound, the
autopsy revealed multiple abrasions on Stephens=s
head and hands.

The
two 9 mm shell casings found at the scene confirmed that White fired twice
while standing near the curb of Stephens=s
yard.  Two spent 9 mm bullets that appeared to have been fired from White=s direction entered the
house through the open doorway, went through a living room wall, and were
recovered from the kitchen.  The evidence also showed that Stephens fired at
least two shots from his .45 caliber semiautomatic pistol.  Based upon the
location of one spent round fired from Stephens=s
pistol, Stephens fired at least once in White=s
direction.

Appellant
denied firing any shots.  He fled the scene but turned himself in several hours
later.  He led police to the location of the pistol that he had buried at a
school not far from the scene of the offense.  The pistol, a .32 caliber
revolver, had one spent round underneath the hammer.  However, no spent bullets
from appellant=s
revolver were found at the scene.

Appellant
testified at trial that the plan was to Arob@ Stephens by pretending to
sell him the car for $800, getting a ride home from Stephens, and forcing him
to get out of the car.  Appellant had a revolver, and he knew that White had a
Glock pistol.  Appellant testified that they were going to use the guns to Apersuade@ or force Stephens to get
out of the car and that there was no plan to shoot or assault Stephens. 
According to appellant, things initially went as planned, and they were on
their way out when White and Stephens began discussing the sale of some pills. 
White and Stephens then went back into the bedroom.  After a couple of minutes,
appellant went to see what was taking them so long.  He saw White pull a gun
out of his sock and hit Stephens Aupside
the head with it.@  A
scuffle ensued between White and Stephens, during which time appellant pointed
his gun at Runnels and moved closer into the bedroom.  White let go of
Stephens, and then appellant and White fled.  Appellant heard shots but did not
look back as he ran away.  Appellant testified that he never intended to hurt
anybody.








We
hold that the evidence is both legally and factually sufficient to support the
jury=s verdict. 
Appellant was charged with and convicted of capital murder as a coconspirator
pursuant to Tex. Penal Code Ann. ' 7.02(b) (Vernon 2003).[2] 
See Ex parte Thompson, 179 S.W.3d 549, 552 (Tex. Crim. App. 2005); Fuller
v. State, 827 S.W.2d 919, 932-33 (Tex. Crim. App. 1992).  Although
appellant may not have had any intent to kill Stephens, White=s acts of turning around,
running back toward the house, pointing his gun at Stephens, firing the gun at
least twice, and shooting Stephens in the chest are sufficient to show that
White intentionally caused Stephens=s
death.  White=s intent
may be discerned from his actions.  The evidence is also sufficient to show
that appellant and White had conspired to commit robbery, that the shooting
occurred in furtherance of that conspiracy even if the robbery did not proceed
as originally planned, that appellant participated in the robbery B even assaulting Runnels
and pointing his gun at her, and that appellant should have anticipated the
murder.  Appellant and White each brought loaded guns with them to the robbery,
and appellant testified that he knew Stephens would have a gun because he was a
drug dealer.  Appellant=s
first point of error is overruled. 

                                                                    Jury
Charge

In
his second point of error, appellant complains that the jury charge was
erroneous and fundamentally flawed in the following ways:  it (1) failed to
include defensive issues and theories, (2) commented on the weight of the evidence,
(3) assumed disputed facts to be true, (4) failed to accurately set forth
appellant=s role in
the crime, (5) failed to accurately charge the jury regarding appellant=s theories, (6) did not
require the jury to make specific findings of fact regarding disputed factual
issues, and (7) was overly broad and ambiguous.  In the third point, appellant
contends that the trial court erred by refusing to submit a charge on the lesser
included offense of felony murder.  In the  fourth point, appellant argues that
the trial court erred in refusing to charge the jury on Aindependent impulse.@  








A
review of the entire jury charge reveals that it constituted a fair and
impartial submission of the case, accurately instructed the jury on the law,
properly applied the law to the facts adduced at trial, and required a
unanimous verdict.  The jury charge did not constitute a comment on the weight
of the evidence, did not assume disputed facts to be true, and was not overly
broad and ambiguous.  Contrary to appellant=s
assertion, a defendant is not entitled to a submission on every issue raised by
his theories of the case.  The submission of a theory that merely negates an
element of the State=s
case is superfluous and impermissible.  Solomon v. State, 49 S.W.3d 356,
368 (Tex. Crim. App. 2001).  Furthermore, the court in Solomon
specifically held that a charge on independent impulse would be improper
because it simply negates the conspiracy liability element of the State=s case.  Id. 
Although a defendant may be entitled to an instruction on a defensive theory
that does not merely negate an element of the State=s case, the theories asserted by appellant are
not affirmative defenses and are not enumerated in the Texas Penal Code.  See
id.  Appellant=s
theories merely negated elements of the State=s
case.  Appellant=s
second and fourth points of error are overruled. 

With
respect to appellant=s
request for an instruction on the lesser included offense of felony murder, we
observe that a charge on a lesser included offense is required if (1) the
lesser included offense is included within the proof necessary to establish the
offense charged and (2) there is some evidence that would permit a rational
jury to find that, if the accused is guilty, he is guilty of only the lesser
offense.  Rousseau v. State, 855 S.W.2d 666, 672-73 (Tex. Crim. App.
1993); Royster v. State, 622 S.W.2d 442, 446 (Tex. Crim. App. 1981).  In
this case, appellant requested a charge on felony murder.  The first prong of
the test is met because felony murder is a lesser included offense of capital
murder.  Salinas v. State, 163 S.W.3d 734, 741 (Tex. Crim. App. 2005); Rousseau,
855 S.W.2d at 673; see Tex. Code
Crim. Proc. Ann. art. 37.09 (Vernon 2006); Tex. Penal Code Ann. '
19.02(b)(3) (Vernon 2003), '
19.03(a)(2) (Vernon Supp. 2008).  The issue then is whether the record contains
evidence satisfying the second prong of the test.  








Felony
murder differs from capital murder in that capital murder requires the intent
to kill, whereas felony murder requires only an intent to commit the underlying
offense and a death caused by the commission of an act clearly dangerous to
human life.  Sections 19.02(b)(3), 19.03(a)(2); Santana v. State, 714
S.W.2d 1, 9 (Tex. Crim. App. 1986).  There is evidence that appellant did not
fire the shot that killed Stephens and that appellant had no intent to kill
Stephens.  However, that is not dispositive because appellant was charged as a
coconspirator and was responsible for the acts of White, the shooter.  See
Salinas, 163 S.W.3d at 741-42; Santana, 714 S.W.2d at 9.  White=s acts of turning around,
running back toward the house, pointing his gun at Stephens, firing the gun at
least twice, and shooting Stephens in the chest show White=s intent to kill and not
merely the commission of an act clearly dangerous to human life.  Thus, the
evidence did not raise the issue of felony murder.  See Salinas, 163
S.W.3d at 741-42; Santana, 714 S.W.2d at 9.  Consequently, appellant was
not entitled to an instruction on the lesser included offense of felony
murder.  Appellant=s
third point of error is overruled.

The
judgment of the trial court is affirmed.

 

 

JIM R. WRIGHT

CHIEF JUSTICE

 

January 30, 2009

Do not publish. 
See Tex. R. App. P.
47.2(b).

Panel consists of:  Wright, C.J.,

McCall, J., and Strange, J.









[1]We note that appellant=s
middle name is shown in the indictment as AJeremaine.@   However, appellant indicated at pretrial that AJermaine@ is the correct
spelling of his middle name.  Both the judgment and the notice of appeal
reflect the correct spelling. 





[2]Section 7.02(b) provides:

 

If, in the attempt to carry out a conspiracy to commit one felony,
another felony is committed by one of the conspirators, all conspirators are
guilty of the felony actually committed, though having no intent to commit it,
if the offense was committed in furtherance of the unlawful purpose and was one
that should have been anticipated as a result of the carrying out of the
conspiracy.